## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

DONAL M. MCDONAGH and MICHELE R.
MCDONAGH,

    Plaintiffs,

 v.

SCIG SERIES III TRUST, SN SERVICING
CORPORATION, U.S. BANK TRUST
NATIONAL ASSOCIATION, and EDWARD
RUSSELL, Substitute Trustee,

    Defendants.

Case No. 2:20-cv-02539-JMP-cgc

### SN SERVICING AND U.S. BANK'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

COMES NOW, Defendants SN Servicing Corporation ("SN Servicing") and U.S. Bank Trust National Association, as trustee for SCIG Services III Trust[1] ("U.S Bank") and files this Memorandum of Law in Support of their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6), respectfully showing this Honorable Court as follows:

### STATEMENT OF FACTS

In this action, the Plaintiffs Donal M. McDonagh and Michele R. McDonagh (collectively the "McDonaghs") seek relief related to a mortgage loan secured by a deed of trust encumbering

---

[1] Plaintiffs have named SCIG Series III Trust and U.S. Bank National Association as separate defendants. However, a trust cannot take action on its own and must act through its trustee. As such, the appropriate designation should be one, not two, parties and be named as U.S. Bank Trust National Association, as Trustee for SCIG Services III Trust. To the extent that this Court considers SCIG Series III Trust and U.S. Bank National Association to be two separate parties, this filing should be construed as being made on behalf of both.

real property located at 2416 Sanders Ridge Lane, Germantown, Tennessee 38138 (the "Property"). [Doc. 1-1] at p.2, ¶ 2.

On August 29, 2007, the McDonaghs obtained a loan from Trust One Bank ("Trust One") in the amount of $700,000.00 (the "Loan") and executed a Deed of Trust encumbering the Property which was recorded on August 30, 2007 as Instrument No. 07136288 in the Register's Office of Shelby County, Tennessee (the "Deed of Trust"). A true and correct copy of the Deed of Trust is attached hereto as **Exhibit "A"**.[2] [Doc. 1-1] at p. 4, ¶ 8. Subsequently, on June 30, 2008, the McDonaghs executed a loan modification agreement concerning the Deed of Trust which was recorded on July 9, 2008 as Instrument No. 08090271 in the Register's Office of Shelby County, Tennessee (the "Loan Modification"). A true and correct copy of the Loan Modification is attached hereto as **Exhibit "B"**.  Through execution of the Loan Modification, the McDonagh's agreed, in part, to the terms of Fixed/Adjustable Rate Rider and a monthly payment of $6,037.12. *Id.*

On July 12, 2012, the McDonaghs filed for bankruptcy protection in the United States Bankruptcy County in the Western District of Tennessee, Case No. 12-27642 (the "Bankruptcy"). [Doc. 1-1] at p. 4-5, ¶¶ 10-2. The successors and assigns of Trust One, including U.S. Bank, participated in the Bankruptcy regarding the Deed of Trust and payments were made directly to the Deed of Trust holders. *Id.* The Bankruptcy was discharged as to the McDonaghs on July 13, 2018. [Doc. 1-1] at p. 4, ¶ 8.

---

[2] This Court may take judicial notice of public records on a Rule 12(b)(6) motion to dismiss without converting the motion to one for summary judgment. *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (citation omitted). Pursuant to Fed. R. Evid. 201(c)(2), SN Servicing and U.S. Bank request that this Court take judicial notice of all exhibits attached hereto, which are public records.

In the month of April 2018, SN Servicing sent the McDonaghs a "Notice of Assignment, Sale or Transfer of Servicing Rights" and other communications informing them that servicing rights for the Loan had been transferred to SN Servicing as servicer for U.S. Bank. [Doc. 1-1] at p. 5, ¶ 13, Ex. II.[3] On May 15, 2018, U.S. Bank filed a "Transfer of Claim Other Than For Security" which stated the Loan had been transferred to U.S. Bank (the "Notice of Transfer").[4] [Doc. 1-1] at p. 5, ¶ 13.   On September 21, 2018, the Deed of Trust was last assigned to U.S. Bank via Assignment of Deed of Trust which was recorded on October 1, 2018 as Instrument No. 18099804 in the Register's Office of Shelby County, Tennessee (the "Assignment"). [Doc. 1-1] at p. 5, ¶ 15. Because the Assignment was recorded after the notice filed in the bankruptcy case, the McDonaghs contend that "all prior communication from SN on behalf of SCIG Trust were untrue and induced Plaintiffs to provide funds and confidential information to unrelated third parties." *Id.*

After the Loan was transferred to U.S. Bank, the McDonaghs requested a modification of the loan "to take advantage of historically low interest rates." [Doc. 1-1] at p. 6, ¶ 16. However, the May 2018 request was denied "due to the ongoing Bankruptcy payments". [Doc. 1-1] at p. 6, ¶ 17. After the denial, the McDonaghs became "concerned" and allegedly requested accountings of the loan. [Doc. 1-1] at p. 6, ¶ 18. It is alleged that in July 2018, the monthly payment increased by approximately $200.00. [Doc. 1-1] at p. 6, ¶ 19. Once again in August 2018, after the

---

[3] The McDonaghs characterize the April 2018 correspondence as "debt collection notices", but the correspondence attached as Exhibit II does not contain a demand for specific payment or state the Loan is in default, instead it provides information of the new holder and servicer and provides standard debt collection and bankruptcy language contained in servicer correspondence.

[4] Exhibit II of the Complaint only contains pages 2-4 of the Notice of Transfer which the McDonaghs incorrectly title a Notice of Assignment and state that the same was "falsely filed" in the Bankruptcy. A true and correct copy of the full Notice of Transfer is attached hereto as **Exhibit "C"**.

Bankruptcy was terminated on July 13, 2018, the McDonaghs requested a modification of the loan and were again denied since they "could afford the ongoing payment". [Doc. 1-1] at p. 6, ¶ 20.

The McDonaghs allege that, after the two denials of requests to modify the Loan, they continued to request documents of the Loan and SN Servicing was unable to provide the same and allegedly could not evidence the monies due under the Loan. [Doc. 1-1] at p. 7, ¶ 21-22. Further, in August 2018, the McDonaghs were informed that SN Servicing would not accept monthly payments of the Loan. [Doc. 1-1] at p. 7, ¶ 23.

On January 18, 2019, counsel for SN Servicing sent the McDonaghs correspondence stating the Loan was due as of April 1, 2017, provided the original lender's name, a copy of the original note, and a payoff statement detailing charges owed (the "SN Response"). [Doc. 1-1] at p. 69-75. However, the McDonaghs allege it should have included "an accounting of the debt, a copy of the assignment for the DOT to the SCIG Trust, [and] an explanation of the premium increase demanded by SN." [Doc. 1-1] at p. 7, ¶ 24.

Throughout 2019 and 2020, the McDonaghs, and/or their attorney, requested clarification of the Loan charges specifically concerning the monthly payment increase, charges labeled "Prior Servicer Escrow Adv", "Prior Servicer Corp. Adv", and "Miscellaneous", and other charges they allege are "unsupported and unverified". [Doc. 1-1] at p. 8, ¶ 25, Ex. IX. SN Servicing scheduled a foreclosure sale of the Property pursuant to the Deed of Trust for June 24, 2020 (the "Foreclosure Sale"). [Doc. 1-1] at p. 9, ¶ 26.

Based on these facts, the McDonaghs seek to enjoin the Foreclosure Sale of the Property and assert five causes of action against SN Servicing and U.S. Bank: (1) breach of contract, (2) breach of covenant of good faith and fair dealing, (3) violations of the "Fair Debt Collection Act", (4) violations of the Tennessee Consumer Protection Act, and (5) violation of 12 U.S.C. § 2601

(RESPA). [Doc. 1-1], *generally*. The McDonaghs are also seeking actual damages, compensatory and punitive damages, statutory damages, discretionary costs and attorney fees but fail to specify any amount of damages throughout the Complaint. [Doc. 1-1] at p. 13-4, Prayer for Relief. For the reasons stated below, the McDonaghs have failed to state a claim for relief against SN Servicing and U.S. Bank and this Court should dismiss this Complaint.

## ARGUMENT AND CITATION OF AUTHORITY

### A.    STANDARD OF REVIEW

This Court may grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) if the complaint does not state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In considering a motion to dismiss, the Court must treat all well-plead allegations of the Complaint as true. *Id.* However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). "Rule 8 marks a notable and generous departure from the hyper-technical code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

### B.    THE PLAINTIFF'S REQUEST FOR AN INJUNCTION IS MOOT

In Count I, the Plaintiff's seek an interlocutory injunction to enjoin a foreclosure sale that had been scheduled for June 24, 2020. *See* [Doc. 1-1], pp. 9-10, ¶¶ 29-38. Prior to removal, the Chancery Court granted a temporary restraining order and set a hearing on an interlocutory

injunction for July 14, 2020. *Id.* at p. 16. Since the June 24 foreclosure sale did not take place due to the TRO, any further request for an injunction is moot because there is no indication that another sale date has been scheduled. *See Reshaw v. Select Portfolio Servicing, Inc.*, No. 3:14-CV-00121-TCB-RGV, 2014 WL 12521446, at *10 (N.D. Ga. Nov. 13, 2014), report and recommendation rejected on other grounds, No. 3:14-CV-121, 2014 WL 12521381 (N.D. Ga. Dec. 5, 2014) (citations omitted). As such, Count I should be dismissed.

## C.   THE MCDONAGHS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT AND BREACH OF COVENANT OF GOOD FAITH AND DEALING.

"In a breach of contract action, claimants must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages cause by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287 (Tenn. 2011) (citation omitted). Moreover, per Tennessee law, a breach of the implied covenant of good faith and fair dealing is not an independent basis for relief, *Solomon v. First Am. Nat'l Bank of Nashville*, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989), but rather is "part and parcel' of a breach of contract claim. *Weese v. Wyndham Vacation Resorts*, No. 3:07-CV-433, 2009 WL 1884058, at *5 (E.D. Tenn. June 30, 2009) (citing *Envoy Corp. v. Quintiles Transnat'l Corp.*, No. 3:03-cv-03-cv-0539, 2007 WL 2173365, at *8 (M.D. Tenn. July 26, 2007)). Said another way, where there is no claim for breach of contract, there can be no claim for violating the common law duty of good faith and fair dealing. *Id.*

### 1.   The McDonaghs are not in privity of contract with SN Servicing.

"Privity of Contract is an essential element to an action founded on the breach of contract." *O'Connel v. Seterus, Inc.*, No. 13-cv-2916-dkv, 2015 WL 11117943, at *1 (W.D. Tenn. March 27, 2015) (quoting *Tipton v. Sparta Water Co*., 57 S.W.2d 793, 795 (Tenn. 1933)). With respect to a breach of contract claim against SN Servicing, the McDonaghs has not alleged that any contract

exists with SN Servicing. The contract at issue in this case, namely the Deed of Trust, is between the McDonaghs and Trust One, its successors and assigns. *See* Exhibit "A". SN Servicing services the Deed of Trust on behalf of the current holder, U.S. Bank.

In breach of contract claims based upon the breach of a Deed of Trust, this Court has previously found that the loan servicer, "having never been a party nor signatory to the Deed of Trust, was never in privity of Contract." *O'Connel,* 2015 WL 11117943 at *1. As SN Servicing is the loan servicer and not the holder of the Deed of Trust, the McDonaghs lack the privity of contract necessary to maintain a breach of contract claim against SN Servicing.  Further, because a claim for a breach of the covenant of good faith and fair dealing is dependent on there being a valid contract, the McDonaghs cannot bring a claim for such breach.  Therefore, all contract-based claims against SN Servicing should be dismissed.

2.   The breach of contract claim against U.S. Bank must be dismissed.

The McDonaghs have failed in multiple respects to plead a proper cause of action for breach of contract against U.S. Bank. The entirety of the McDonaghs cause of action against U.S. Bank states as follows:

40.    Defendants initiation of foreclosure proceedings constitutes a breach of the terms and conditions of the DOT because the Defendants are attempting to base the foreclosure on unproven, unknown and arbitrary charges not supported by the DOT.

41.    The breach of contract committed by the Defendants has caused the Plaintiffs to incur ongoing and substantial economic damages.

[Doc. 1-1] at p. 10, ¶¶ 40-1.

First, it should be noted that the McDonaghs fail to reference any particular provision of the Deed of Trust, or even attach or properly cite the recorded document in their Complaint. Instead, they establish their claim of breach of contract on the setting of the Foreclosure Sale by U.S. Bank on "unproven, unknown, and arbitrary charges not supported by the DOT." [Doc. 1-1]

at p. 10, ¶ 40. Upon review of the Deed of Trust, it is quickly realized that U.S. Bank has acted in accordance with its terms and was not deficient in its performance of the terms.

The Deed of Trust secures not only the Loan but also future advances, and "all additional sums advances and incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument." *See* Exhibit "A", § 4; *see also* § 16. Section 14 of the Deed of Trust defines default as a failure to make payments, and Section 15 of the Deed of Trust allows the Lender, its successors and assigns, to foreclosure upon the Deed of Trust. *Id.*, §§ 14-15. Under these terms, U.S. Bank is allowed to assess advances and charges, including attorney's fees, against the Deed of Trust. *Id*. Further, the Deed of Trust does not dictate that certain amount of money must be due in order to foreclose upon the property, only that a default occur.

Here, the McDonaghs disagreed with the monthly payment amount required by U.S. Bank and also disagreed with U.S. Bank's denial to provide a lower interest rate to them upon request. [Doc. 1-1] at p. 6, ¶¶ 17-20. For these reasons the McDonaghs did not make full payments under the Deed of Trust. The SN Response provides that the loan was in default since April 2017 and a letter contained in Exhibit IX of the Complaint, dated June 17, 2020, states "My clients agree that a total of 24 payments are due." [Doc. 1-1] at p. 69-75. Thus, the McDonaghs have admitted they did not make payments for at least 24 months and were in default. Since they were in default, U.S. Bank rightfully scheduled a Foreclosure Sale as allowed by the Deed of Trust in response to the default.

Because the McDonaghs were subject to foreclosure because of their own admitted breach under the Deed of Trust, they cannot claim that they have been damaged by any "unproven, unknown and arbitrary charges not supported by the DOT."

The McDonaghs have failed to state that any of the actions taken by U.S. Bank breached a contract and thus this claim must be dismissed. Further, since the breach of contact claims fails, the breach of the covenant of good faith and dealing must also fail and be dismissed.

**D.    THE MCDONAGHS FAIL TO STATE A CLAIM UNDER THE FDCPA**

The McDonaghs alleges that SN Servicing and U.S. Bank violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq. See generally*, [Doc. 15]. "To succeed on a claim under the FDCPA, a plaintiff must show that the money or property being collected qualifies as a 'debt.' Second, the collecting entity must qualify as a 'debt collector.' Third, a plaintiff must show that the debt collector violated a provision of the FDCPA." *Stamper v. Wilson & Assocs., P.L.L.C.*, No. 3:09-cv-270, 2010 WL 1408585, at *3 (E.D. Tenn. March 31, 2010).

1.    The McDonaghs have failed to sufficiently plead that SN and U.S. Bank are "debt collectors" pursuant to the FDCPA.

To show that a defendant qualifies as a debt collector, facts must be pleaded, and conclusory allegations that a defendant is a debt collector are improper. *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 366 (6th Cir. 2012). Simply "label[ing] the [ ] Defendant[ ] as [a] debt collector[ ] . . . is plainly a legal conclusion that is not entitled to be credited as true on a motion to dismiss." *Id.* at 365-66 (citation omitted). Under the FDCPA,

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6). Here, the McDonaghs states in conclusory terms that SN Servicing is "a third party debt collector" and that SN Servicing and U.S. Bank engaged in "debt collection efforts"  See [Doc. 1-1] at p. 2, ¶ 4 and p. 11, ¶ 48. It should be noted that the McDonaghs do not state that U.S. Bank is a debt collector anywhere in the Complaint. The fact that SN Servicing states in its letters attached to the Complaint that it is a debt collector is irrelevant, since "merely identifying oneself as a debt collector does not make one a debt collector under the FDCPA." *Barbato v. Greystone All., LLC*, No. 3:13-CV-2748, 2017 WL 1193731, at *16 (M.D. Pa. Mar. 30, 2017) (quoting *Alamo v. ABC Fin. Servs., Inc.*, No. 09-5686, 2011 WL 221766, at *5 (E.D. Pa. Jan. 20, 2011) (collecting cases). Instead, facts must be pleaded showing a defendant meets the statutory definition.

Thus, since Complaint fails to set forth any factual allegations concerning whether SN Servicing or U.S. Bank "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [that it] regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," 15 U.S.C. § 1692a(6), the Complaint fails to state a claim under the FDCPA.

2. The McDonaghs have failed to state any false, deceptive or misleading statement by SN Servicing and U.S. Bank in violation of 15 U.S.C. § 1692(e).

Even if the McDonaghs had pleaded facts showing that SN Servicing or U.S. Bank qualified as debt collectors, their claim still fails. The McDonaghs claim that the Notice of Transfer and other correspondence from April 2018 sent by SN Servicing is "demonstrably false" since the Assignment was executed and recorded at a later date. [Doc. 1-1] at p. 11, ¶ 49. This is an inaccurate representation of the documents sent by SN Servicing and filed in the Bankruptcy. The Notice of Transfer and other documents do not specifically state that an assignment was executed, rather they state that the Loan was transferred to U.S. Bank and SN Servicing is the new servicer.

[Doc. 1-1] at p. 38-40; Exhibit "C". "Under Tennessee law, the deed of trust follows the note. Whoever holds the note owns the deed." *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 749 (6th Cir. 2014) (citing *W.C. Early Co. v. Williams*, 186 S.W. 102, 103-04 (Tenn. 1916); *Clark v. Jones*, 27 S.W. 1009, 1010 (Tenn. 1894)). In other words, assignments of a deed of trust are simply not required. *Id.* ("An assignment of a note is enforceable regardless of whether it is recorded."). The Plaintiffs have pleaded no facts to show that U.S. Bank was not the owner of the loan at the time the subject communications were received. Because no assignments are required, the lack of an assignment simply does not make it plausible that U.S. Bank did not hold the underlying promissory note.  Thus, since the McDonaghs have failed to plead any facts showing it was poausible that any false, misleading, or deceptive statement was made by SN Servicing or U.S. Bank, the FDCPA claim based on 15 U.S.C. § 1692(e) must be dismissed..

3.  <u>SN Servicing provided validation of the debt to the McDonaghs.</u>

The McDonaghs also allege that SN Servicing is in violation of 15 U.S.C. § 1692g(b), which provides that,

> [i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

Under this statute, if a debtor disputes the debt within thirty days from the initial communication, as defined in 15 U.S.C. § 1692(a), a debt collector must provide verification of the debt. *Id*. The McDonaghs' claim first fails in that nowhere in the they fail to state or identify the initial

communication the debt sent by SN Servicing or U.S. Bank.[5] Since they cannot identify the date of the initial communication, the McDonaghs cannot state they disputed the debt within the requisite time period, as the time period is not identified and have not properly established a claim.

Further, even if the McDonaghs had properly constructed their claim under this statute, they cited the SN Response, dated January 8, 2019, which verified the amount of the debt by attaching a payoff statement with a breakdown of charges and included a copy of the note executed to the original creditor as required by 15 U.S.C. § 1692(g). [Doc. 1-1] at p. 69-75. While the McDonaghs' claim the verification should have included a detailing of interest charges and specific breakdown of advances, [Doc. 1-1] at p. 7, ¶ 24, this standard is not required by the FDCPA. The Sixth Circuit stated in *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785-86 (6th Cit. 2014) that

> The verification provision must be interpreted to provide the consumer with notice of how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment obligation. This information does not have to be extensive. It should provide the date and nature of the transaction that led to the debt, such as a purchase on a particular date, a missed rental payment for a specific month, a fee for a particular service provided at a specified time, or a fine for a particular offense assessed on a certain date.

The SN Response meets this requirement by providing a breakdown of the charges on the included payoff statement, although it appears the McDonaghs have failed to include the detailed charges which were referenced in this letter from the Exhibit. [Doc. 1-1] at p. 69-75. Further, the other correspondence, provided in Exhibit IX of the Complaint, references disputes of specific charges incurred with this loan and other correspondence sent by SN Servicing, but excluded from the exhibits. [Doc. 1-1] at p. 77-84. As the purpose of 15 U.S.C. § 1692(g)(b) is to provide a debtor with sufficient notice from which the debtor could dispute this debt, the McDonaghs have admitted

---

[5] The Notice of Transfer and associated correspondence does not quality as an initial communication under 15 U.S.C. § 1692(a) and was not sent for debt collection purposes, but to notify the borrowers of a transfer in interest.

that SN Servicing fulfilled this statutory duty through attaching there subsequent letters detailing specific disputes of certain charges. *Id.* Thus, the McDonaghs have failed to state a claim against SN Servicing and U.S. Bank for violation of 15 U.S.C. ¶ 1692(g).

4. <u>In the alternative, should the McDonaghs be able to proceed with his FDCPA claim, they may only seek statutory damages.</u>

Under the FDCPA, an aggrieved plaintiff can recover "any actual damage sustained by such person as a result of such failure" to comply with the Act, and "in the case of any action by an individual, such damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(1)-(2)(A). The recovery of actual damages is not permitted unless a plaintiff sets forth sufficient allegations in their complaint supporting such damages. *Douglas v. Southstar Funding, LLC*, No. 1:18-CV-1802-MLB-JSA, 2018 WL 6136792, at *8 (N.D. Ga. Oct. 18, 2018) (citing *Emanuel v. Am. Credit Exch.*, 870 F.2d 805, 809 (2d Cir. 1989)) (citations omitted). On the other hand, statutory damages (which cannot exceed $1,000) can be recovered without a showing of actual damages. *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007). The Complaint does not detail any facts regarding damages, and states only that the McDonaghs are entitled damages. [Doc. 1-1] at ¶ 51. Because they have failed to allege any facts showing actual damages, if the FDCPA claim can move forward, it should only be on the basis of possible statutory damages.

## E.  THE MCDONAGHS FAIL TO STATE CLAIM UNDER THE TCPA.

In Count V, the McDonaghs attempt to state a claim under the  Tennessee Consumer Protect Act ("TCPA"), which was enacted partly to " protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state" Tenn. Code Ann. § 47-18-102(2). A list of unfair and deceptive practices is provided in Tenn. Code Ann. § 47-18-104(b). However, it is well

established that "the TCPA does not apply to allegedly deceptive conduct in foreclosure proceedings." *Jones v. BAC Home Loans Servicing, LP*, No. W2016-00717-COA-R3-CV, 2017 WL 2972218, at *8 (Tenn. Ct. App. July 12, 2017) (citations omitted). If a violation is proven, a plaintiff is entitled to "recover actual damages" but only when he or she suffers an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated." Tenn. Code Ann. § 47-18-109(a)(1); *see also Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (citing Tenn. Code Ann. § 47-18-109(a)(1)). A claim under the TCPA is essentially a claim of fraud and must be pleaded with the particularity under Rule 9(b). *See Humphries v. West End Terrace, Inc.*, 795 S.W.2d 128, 132 (Tenn. Ct. App. 1990); *see also* Donald F. Paine, *The Tennessee Consumer Protection Act*, TENNESSEE BAR JOURNAL, June 2014, at 30.

The McDonaghs base their claim of violation of the TCPA on alleged "misrepresentations" made by SN Servicing and U.S. Bank concerning the transfer of the Deed of Trust and the amount of the debt. [Doc. 1-1] at p. 12, ¶¶ 53-4. Further, the McDonaghs allege violations from allegedly failing to provide accountings for the debt and alleged result to accept payments while charging late fees. [Doc. 1-1] at p. 12, ¶¶ 55-6. At no point in the Complaint, do the McDonaghs specify the subsection of the TCPA was violated by SN Servicing and U.S. Bank's alleged actions. Upon review of the list of 52 unfair and deceptive practices listed in Tenn. Code Ann. § 47-18-104(b), there do not appear to be any listed acts referring to disputes of debts, servicing of account, or disputes of payments. While Tenn. Code Ann. §47-18-104(b)(27) does act as a "catch-all" for any other acts, this statute specifies enforcement is "vested exclusively" in the Tennessee Attorney General. The McDonaghs also fail to specify any actual damages incurred based on the alleged violations.

14

Thus, since the McDonaghs have not specified with particularity any actions by SN Servicing and U.S. Bank made in violation of the TCPA and has not articulated any actual damages from the same, their claim under the TCPA must be dismissed.

### F. THE MCDONAGHS FAIL TO STATE A CLAIM UNDER RESPA.

Lastly, the McDonaghs claim that SN Servicing and U.S. Bank have violated the Real Estate Settlement Practices Act, 12 U.S.C. § 2601, et. seq, by allegedly failing to respond to Notices of Error and Qualified Written Request ("QWR"). [Doc. 1-1] at p. 12-3, ¶¶ 59-62. QWRs are made pursuant to 12 U.S.C. § 2605(e), which sets forth a loan servicers duties if they receive a QWR, which is defined a "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Notably,

> the duty to respond to these QWRs applies only to loan servicers, which the statute defines as a "person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." "Servicing" in turn includes
>
>> [R]eceiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts ... and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

*Gibson v. Mortg. Elec. Registration Sys., Inc.*, No. 11-2173-STA, 2011 WL 3608538, at *4 (W.D. Tenn. Aug. 16, 2011) (quoting 12 U.S.C. § 2605(i)(2)-(3)).

"[A] servicer may designate an exclusive address for receipt of QWRs. *See* 12 C.F.R. §§ 1024.35(c) and 1024.36(b). A servicer is not obligated to respond to QWRs sent to an address

other than the designated QWR address." *Best v. Ocwen Loan Servicing, LLC*, No. 16-1217, 2016 WL 10592245, at *1 (citing *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1149 (10th Cir. 2013)). SN notified the McDonaghs of a designated address, stating that "[i]f you want to send a 'qualified written request' regarding the servicing of your loan, it must be sent to this address: SN Servicing Corporation, 323 Fifth St, Eureka, CA 95501." [Doc. 1-1] at p. 39. If a servicer violates its duties to respond to a QWR, a plaintiff can recover "any actual damages to the borrower as a result of the failure; and any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000."

Here, the McDonaghs' RESPA claim immediately fails as to U.S. Bank because it is never alleged that it qualifies as a "servicer" under RESPA. *See Gibson*, 2011 WL 3608538, at *4 ("Failure to plead that a defendant is in fact a loan servicer will defeat plaintiff's cause of action under RESPA . . . . ). As to SN Servicing, the claim fails because the McDonaghs have failed to plead any facts showing that they sent a letter qualifying as a QWR to SN Servicing's designated address. *See, e.g., Best*, 2016 WL 10592245, at *2 ("The district court properly concluded that Best did not mail her QWR to Ocwen's designated address."). Instead, the only letters attached that contain any indication of where they were sent show that they were mailed to a different address or sent via email. *See* [Doc. 1-1] at pp. 59-67; 77.

Even if the McDonaghs had shown that they mailed QWRs to the proper address, their claim still fails because they have not pleaded any actual damages as a result of not getting the responses they believe they were entitled to. As a result, they lack Article III standing to bring their RESPA claim. "[U]nder RESPA, a plaintiff must plead actual damages as part of his or her claim. [cit]. The plaintiff must establish more than a violation. [cit]. He or she 'must suffer actual, demonstrable damages, as the damages must occur 'as a result of' the specific violation.'" *Dunkle*

16

*v. Bank of New York Mellon*, No. 3:11-CV-1242, 2013 WL 1910310, at *6 (M.D. Tenn. Apr. 16, 2013), *report and recommendation adopted*, No. 3-11-1242, 2013 WL 1910748 (M.D. Tenn. May 8, 2013); *but see Marais v. Chase Home Fin., LLC*, 736 F.3d 711, 721-22 (6th Cir. 2013) (citations omitted) (stating that the approach of two unpublished decisions 'counsels against the dismissal of a RESPA claims on the basis of inartfully-pleaded actual damages.").

Although the Sixth Circuit appeared to disapprove of the principles espoused in *Dunkle*, the *Marais* decision has effectively been abrogated by the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). In *Spokeo*, the Supreme Court held that a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549. Although the Supreme Court did find that some procedural violations could confer standing without allegations of damages, the intricacies of the *Spokeo* holding were analyzed in great detail by the Eastern District of New York, which concluded that a plaintiff does not have standing to bring a claim under 12 U.S.C. § 2605 – the section at issue here – without alleging that they suffered actual damages. *See Dolan v. Select Portfolio Servicing*, No. 03-CV-3285 PKC AKT, 2016 WL 4099109, at *6 (E.D.N.Y. Aug. 2, 2016). In this regard, the Sixth Circuit is clear that *facts* showing actual damages must be pleaded to show standing. Courts cannot accept "naked assertions devoid of further factual enhancement . . ." to show an injury-in-fact. *White v. U.S.*, 601 U.S. 545, 552 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Here, the McDonaghs have utterly failed to plead any facts whatsoever to show that they have been damaged by a violation of 12 U.S.C. § 2605 and its corresponding regulations. The Complaint states that "The Defendants are liable to the Plaintiffs for the actions that violated RESPA which include the specified actual damages, statutory damages, costs and attorney fees".

[Doc. 1-1] at p. 13, ¶ 62. There are no facts alleged showing what damages have been suffered, and certainly nothing showing that any damages can be connected to the alleged failure to respond to a QWR. This is insufficient to prove Article III standing and the McDonaghs' RESPA claim must be dismissed for lack of subject matter jurisdiction (if not dismissed for failure to state a claim upon which relief can be granted).

## **CONCLUSION**

Based on the foregoing, SN Servicing and U.S. Bank respectfully requests that this Court grant its Motion to Dismiss.

Respectfully submitted, this 14th date of August 2020.

> */s/ Patty Whitehead*
> BRET J. CHANESS (BPR No. 31643)
> PATTY WHITEHEAD (BPR No. 34488)
> **RUBIN LUBLIN TN, PLLC**
> 3145 Avalon Ridge Place, Suite 100
> Peachtree Corners, Georgia 30071
> (678) 281-2730 (Telephone)
> (404) 921-9016 (Facsimile)
> bchaness@rlselaw.com
> pwhitehead@rlselaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have, this 14th day of August 2020, served all parties in this matter with the foregoing by CM/ECF.

> */s/ Patty Whitehead*
> PATTY WHITEHEAD (BPR No. 34488)



**EXHIBIT A**

# *Tom Leatherwood*
## Shelby County Register

As evidenced by the instrument number shown below, this document

has been recorded as a permanent record in the archives of the

Office of the Shelby County Register.



```
              07136288
08/30/2007 - 03:21 PM
7 PGS : R - MORTGAGE
DOROTHY  00517179-7136288
VALUE                      700000.00
MORTGAGE TAX                  802.70
TRANSFER TAX                    0.00
RECORDING FEE                  35.00
DP FEE                          2.00
REGISTER'S FEE                  1.00
WALK THRU FEE                   0.00
TOTAL AMOUNT                  840.70
        TOM LEATHERWOOD
  REGISTER OF DEEDS SHELBY COUNTY TENNESSEE
```

160 N. Main St., Suite 519 ~ Memphis, Tennessee 38103 ~ (901) 545-4366
http://register.shelby.tn.us

RETURN TO:
THE HEWGLEY LAW FIRM
6305 Humphreys Boulevard, Suite 108
Memphis, TN 38120

This document was prepared by (name and address) .............
...................................................................
TRUST ONE BANK
.....1715 AARON BRENNER DR... MEMPHIS, TN 38120...................
The MAXIMUM PRINCIPAL INDEBTEDNESS for
Tennessee Recording Tax Purposes is .700,000.00.............

———————State of Tennessee——————   Space Above This Line For Recording Data—————————

# DEED OF TRUST (With Future Advance Clause)

☐ This is an "Open End Mortgage," as defined in Chapter 137, 1987 Public Acts of Tennessee, and Grantor(s) hereby acknowledge(s) notice that said Public Chapter 137 gives Grantor(s) the right, by complying with its provisions, to reduce the limit on the maximum amount of indebtedness secured by this Deed of Trust. The required notice of limitation shall be served on Lender in the format and at the address stated in the open-end credit agreement.

☒ This instrument secures, among other things, an obligation or obligations incurred for the construction of an improvement on the hereinafter described Land and including the acquisition cost of the Land, and to that extent this instrument constitutes a "construction mortgage," as that term is used in Tenn. Code Ann. § 47-9-334.

1.  **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is ....08/29/2007........................
    and the parties, their addresses and tax identification numbers, if required, are as follows:
    GRANTOR:
    DONAL MCDONAGH
    MICHELE MCDONAGH
    8828 RIVER RISE DR
    CORDOVA    TN    38018-

    TRUSTEE:
    ERIN WARD
    1715 AARON BRENNER DR
    MEMPHIS, TN 38120

    LENDER: (and its successors and assigns, such term always referring to the lawful owner and holder of the Secured Debt (as hereinafter defined)):
    TRUST ONE BANK
    1715 AARON BRENNER DR
    MEMPHIS, TN 38120

2.  **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, bargains, transfers, sets over, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:
    SEE ATTACHED EXHIBIT "A" FOR COMPLETE LEGAL DESCRIPTION.

    The property is located in ....SHELBY.................................................... at ..........................................
                                                    (County)
    LOT 6 SANDERS RIDGE PUD................, .............GERMANTOWN............., Tennessee ........................
              (Address)                                          (City)                                      (ZIP Code)

    Together with all rights, easements, estates, tenements, hereditaments, interests, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

TENNESSEE - DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)
Experts © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-DT-TN 8/13/2002 Custom 7/14/05   SNV00103



(page 1 of 6)

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ .........700000,00......................................... . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions.(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.) PROMISSORY NOTE OF EVEN DATE AND EVEN AMOUNT.

   B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Grantor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.
   C. All obligations Grantor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.
   D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.
   This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Grantor warrants that Grantor is lawfully seized and possessed of the estate conveyed by this Security Instrument and has the right to irrevocably grant, bargain, transfer, set over, convey and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Grantor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property. Grantor will comply with all present and future applicable law affecting the Property.
    Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.



Exper̄e® © 1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-DT-TN  8/13/2002 Custom 7/14/05  SNV00103

12. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, bargains, transfers, sets over, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.

Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Deed of Trust. This assignment will remain in effect during any redemption period until the Secured Debt is satisfied. Grantor agrees that Lender or Trustee may take actual possession of the Property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Grantor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default. Grantor waives notice or demand prior to acceleration.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property. If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public outcry of the Property to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates after advertising the sale at least three (3) different times in some newspaper published in the county in which the sale is to be made, the first of which publications shall be at least twenty (20) days previous to said sale; provided, however, that Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale. Any sale hereunder may be postponed by Trustee and reset at a later date without additional publication; provided that an announcement to that effect be made at the scheduled place of sale at the time and on the date the sale was set, either originally or by prior announcement of postponement.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor or any party or entity lawfully entitled thereto. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein. In the event of any sale hereunder, Grantor and all persons holding thereunder shall be and become tenants at will of the purchaser, said tenancy to be terminable at the option of the purchaser immediately upon notice from the purchaser.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released.

17. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance" or "regulated substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

*(page 3 of 6)*

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Grantor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Grantor shall take all necessary remedial action in accordance with any Environmental Law.

D. Grantor shall immediately notify Lender in writing as soon as Grantor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

18. **CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. **INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance and such insurer shall be required to provide at least thirty (30) days notice to Lender prior to cancellation or material change. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

24. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing, unless otherwise required by applicable law. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

25. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Unless prohibited by applicable law, notice to one Grantor will be deemed to be notice to all Grantors.

26. **WAIVERS.** Except to the extent prohibited by law, Grantor waives all rights to homestead, curtesy and dower, appraisement, and the marshalling of liens and assets relating to the Property. In addition, statutory rights of redemption by Grantor after foreclosure sale are expressly waived to the extent not prohibited by law.

27. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Open End Mortgage.** This Deed of Trust is an "Open End Mortgage" as defined under Tenn. Code Ann. § 47-28-101 and secures the Secured Debt which includes a revolving line of credit provision. The Secured Debt is due and payable on ............................... if not paid earlier. The due date may not be more than thirty years after the date of the Secured Debt. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.



(page 4 of 6)

Express™ © 1994 Bankers Systems, Inc., St. Cloud, MN Form RE-DT-TN 6/13/2002 Custom 7/14/05   SNV00103

☐ **Fixture Filing.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
   ☐ Condominium Rider   ☐ Planned Unit Development Rider   ☐ Other ............................................

☐ **REAL ESTATE OR RESIDENCE SECURITY. PURSUANT TO THE PROVISIONS OF T.C.A. SECTION 47-18-2404, AND TO THE EXTENT THAT THE LOAN OR INDEBTEDNESS IS SECURED BY THE OWNER-OCCUPIED RESIDENCE OF GRANTOR, PLEASE BE ADVISED AS FOLLOWS:**
   (A) FAILURE TO MAKE TIMELY PAYMENTS OR TO REPAY THE LOAN WILL RESULT IN THE GRANTOR'S HOME BEING SUBJECT TO FORECLOSURE.
   (B) ADDITIONAL INFORMATION ON DEBT CONSOLIDATION LOANS IS AVAILABLE FROM THE TENNESSEE DEPARTMENT OF COMMERCE & INSURANCE, DIVISION OF CONSUMER AFFAIRS AT 1-800-342-8385.
   IN ADDITION, IT IS THE OBLIGATION OF THE GRANTOR TO MAKE PAYMENTS TO PRIOR LENDERS.
   BY SIGNING BELOW, GRANTOR REPRESENTS AND WARRANTS THAT HE/SHE HAS READ THE FOREGOING COMPLETELY AND UNDERSTANDS THE INFORMATION CONTAINED HEREIN.

☐ **Additional Terms.**

**SIGNATURES.** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

........................................ 8/29/07    ........................................ 8/29/07
(Signature) DONAL MCDONAGH    (Date)   (Signature) MICHELE MCDONAGH    (Date)

........................................    ........................................
(Signature)    (Date)   (Signature)    (Date)

**INDIVIDUAL ACKNOWLEDGMENT:**
STATE OF TENNESSEE
COUNTY OF __SHELBY_____

Personally appeared before me, the undersigned, a Notary Public of the State and County aforesaid, DONAL_____ ___McDONAGH_____ , with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that ___ he executed the within instrument for the purposes therein contained.

WITNESS my hand, at office, this __29th__ day of __August_____ __2007__

My Commission Expires: ___7/27/11_____      (Notary Public)

**INDIVIDUAL ACKNOWLEDGMENT:**
STATE OF TENNESSEE
COUNTY OF __SHELBY_____

Personally appeared before me, the undersigned, a Notary Public of the State and County aforesaid, __MICHELE___ ___McDONAGH_____ , with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that __s he executed the within instrument for the purposes therein contained.

WITNESS my hand, at office, this __29th__ day of __August_____ __2007__

My Commission Expires: ___7/27/11_____
(Notary Public)

Please return this document after recording to: ..................................................................................
Mail Tax Bills to: ...............................................................................................................

*(page 5 of 6)*

**INDIVIDUAL ACKNOWLEDGMENT:**
STATE OF TENNESSEE
COUNTY OF _____

    Personally appeared before me, the undersigned, a Notary Public of the State and County aforesaid, _____ _____ , with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that ___ he executed the within instrument for the purposes therein contained.

    WITNESS my hand, at office, this _____ day of _____ , _____ .

My Commission Expires: _____

                              (Notary Public)

**INDIVIDUAL ACKNOWLEDGMENT:**
STATE OF TENNESSEE
COUNTY OF _____
                               TRUST ONE BANK
    Personally appeared before me, the undersigned, a Notary Public of the State and County aforesaid, _____ _____ , with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged that ___ he executed the within instrument for the purposes therein contained.

    WITNESS my hand, at office, this _____ day of _____ , _____ .

My Commission Expires: _____

                              (Notary Public)

**POWER OF ATTORNEY ACKNOWLEDGMENT:**
STATE OF TENNESSEE
COUNTY OF _____

    On this the _____ day of _____ , _____ , before me personally appeared _____ _____ , with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), to be the person who executed the foregoing instrument on behalf of _____ , acknowledged that such person executed the same as the free act and deed of _____ , evidenced by that certain Power of Attorney of record in Book _____ , page _____ , in the Register's Office for _____ County, Tennessee.

    WITNESS my hand, at office, this _____ day of _____ , _____ .

My Commission Expires: _____

                              (Notary Public)

                  THE HEWGLEY LAW FIRM
                  6305 Humphreys Boulevard, Suite 108, Memphis, TN  38120
Please return this document after recording to: ................................................................................
Mail Tax Bills to: Donal & Michele McDonagh, 8828 River Rice Drive, Cordova, TN 38018 .......

Express © 1994 Bankers Systems, Inc., St. Cloud, MN  Form RE-DT-TN  6/13/2002 Custom 7/14/06   SNV00103

Exhibit "A"

Borrower(s):   Donal M. McDonagh
               Michele R. McDonagh

Address:       Lot 6 Sanders Ridge PUD
               Germantown, TN 38138

Legal Description:

Lot 6 Final Plat, Sanders Ridge PUD, as shown on plat of record in Plat Book 214, Page 37, in the Shelby County Register's Office to which plat of reference is hereby made for a more particular description of said property and being part of the same property conveyed to Sanders Ridge, GP in Warranty Deed of Record at Instrument No. 03083107, further recorded as Instrument No. 05163331, in the Register's Office of Shelby County, Tennessee.

The property is conveyed subject to subdivision restrictions, building lines and easements of record as set out in Plat Book 214, Page 37; Declaration of covenants, Conditions and Restrictions of record at Instrument Number 04171006; Easements of record at Instrument Numbers 03247629 and 04149778; all of record in the Register's Office of Shelby County, Tennessee.

# EXHIBIT B



# *Tom Leatherwood*

## Shelby County Register

As evidenced by the instrument number shown below, this document has been recorded as a permanent record in the archives of the Office of the Shelby County Register.



08090271

07/09/2008 - 09:23 AM

| 5 PGS : R – MODIFICATION | |
|---|---|
| MARYF   583528-8090271 | |
| VALUE | 0.00 |
| MORTGAGE TAX | 0.00 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 25.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 0.00 |
| WALK THRU FEE | 0.00 |
| TOTAL AMOUNT | 27.00 |

**TOM LEATHERWOOD**
REGISTER OF DEEDS SHELBY COUNTY TENNESSEE

_____(Space Above This Line For Recording Data)_____

Maximum principal indebtedness for Tennessee recording tax purposes is $0. Exact same collateral as prior debt. Does not increase principal indebtedness.

## LOAN MODIFICATION AGREEMENT
### (Providing for Adjustable Interest)

This Loan Modification Agreement ("Agreement") made this **30th** day of **JUNE, 2008**, between **DONAL M. McDONAGH and MICHELE R. McDONAGH, husband and wife,** ("Borrower") and **TRUST ONE  BANK** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated **August 29, 2007,** and recorded **August 30, 2007,** at Instrument Number **07136288,** in the Register's Office of Shelby County, Tennessee, (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property" located at

### 2416 Sanders Ridge, Germantown, TN  38138

_____
(Property Address)

the real property described being set forth as follows:

> **Lot 6, SANDERS RIDGE P.U.D., as shown on plat of record in Plat Book 230, Page
> 23, in the Register's Office of Shelby County, Tennessee, to which plat reference is
> hereby made for a more particular description of said property.**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

As of **June 30, 2008,** the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is  U. S. **$700,000.00** consisting of the amount(s) loaned to Borrower by Lender and any interest capitalized to date.

Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender.  Interest shall be charged on the Unpaid Principal Balance at the initial yearly rate of **6.25%** from **June 30, 2008,** and as set forth in the Fixed/Adjustable Rate Rider attached hereto and incorporated herein by this reference.  Borrower promises to make monthly payments of principal and interest of U. S. **$6,037.12** beginning on the **first** day of **August, 2008,** and as set forth in the Fixed/Adjustable Rate Rider attached hereto and incorporated herein by this reference, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.  If on **July 1, 2023,** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

Borrower will make such payments at **TRUST ONE BANK, 1715 Aaron Brenner Drive, Suite 100, Memphis, TN  38120,** or at such other places as Lender may require.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower also will comply with all other covenants, agreements and requirements of the Security Instrument, including, without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a)      all terms and provisions of the Note and Security Instrument (if any) providing for, implementing or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b)      all terms and provisions of any adjustable rate or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

**TRUST ONE BANK**

By: _____

William Bryan Jones, Senior Vice President
Lender

_____
DONAL M. McDONAGH
Borrower

_____
MICHELE R. McDONAGH
Borrower

STATE OF **TENNESSEE**
COUNTY OF **SHELBY**

On this the **30th** day of **June, 2008**, before me personally appeared **DONAL M. McDONAGH and MICHELE R. McDONAGH, husband and wife**, with whom I am personally acquainted, and who executed the foregoing instrument, and who acknowledged the execution of the same to be their free act and deed.

WITNESS my hand and notarial seal at office the day and year above written.

My Commission expires: **7/27/11.**

_____
Notary Public

STATE OF **TENNESSEE**

COUNTY OF **SHELBY**

Before me, a Notary Public of the State and County aforesaid, personally appeared **WILLIAM BRYAN JONES**, with whom I am personally acquainted, and who, upon oath, acknowledged **himself** to be the **SENIOR VICE PRESIDENT** of **TRUST ONE BANK**, the within named bargainor, and that **he** as such **SENIOR VICE PRESIDENT**, executed the foregoing instrument for the purposes therein contained by signing the name of the Bank by **himself** as **SENIOR VICE PRESIDENT**.

WITNESS my hand and notarial seal at office this 30th day of June, 2008.

My Commission expires: **7 -27-11**

_____
Notary Public

THIS INSTRUMENT PREPARED BY
AND RETURN TO:
MID SOUTH TITLE SERVICES, LLC / THE HEWGLEY LAW FIRM
6305 Humphreys Boulevard, Suite 108
Memphis, Tennessee 38120

LOAN MODIFICATION AGREEMENT-Single Family-Fannie Mae Uniform Instrument     Form 3179 1/01     Page 2 of 2

# FIXED/ADJUSTABLE RATE RIDER
## (One Year Treasury Index - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this **30th** day of **June, 2008**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to **Trust One Bank** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**2416 Sanders Ridge, Germantown, Tennessee 38138**

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN THE BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT THE BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial fixed interest rate of **6.25%**. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the **first day of July, 2013**, and the adjustable interest rate I will pay may change on that day every **60th** month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **three percentage points (3.00%)** to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one-percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

Loan No.:

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **8.25%** or less than **6.00%**. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **12.25%**.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1.  Until borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in section a above, uniform covenant 18 of the security instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2.  When borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in section a above, uniform covenant 18 of the security instrument described in section b1 above shall then cease to be in effect, and the provisions of uniform covenant 18 of the security instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note

Loan No.:

and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)     _____ (Seal)
Borrower                                                    Borrower
                                      DONAL M. McDONAGH

_____ (Seal)     _____ (Seal)
Borrower                                                    Borrower
                                      MICHELE R. McDONAGH

**EXHHIBIT C**

B 2100A (Form 2100A) (12/15)

# UNITED STATES BANKRUPTCY COURT

Western District of Tennessee

In re Donal Martin McDonagh and                    ,        Case No. 12-27642
Michele Rawls McDonagh

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

US Bank Trust National Association, as Trustee          Trust One Bank, a division of Synovus Bank Attn: Douglas M. Alrutz

of the SCIG Series III Trust

Name of Transferee                                    Name of Transferor

Name and Address where notices to transferee          Court Claim # (if known): 21-1
should be sent:                                       Amount of Claim: $578,884.18
C/O SN Servicing Corp.                                Date Claim Filed: 11/16/2012
323 5th Street
Eureka, CA 95501

Phone: 800-603-0836                                   Phone: _____
Last Four Digits of Acct #: 4108                      Last Four Digits of Acct. #: _____

Name and Address where transferee payments
should be sent (if different from above):

Phone: _____
Last Four Digits of Acct #:_____

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____          Date: 5/17/18
Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

 SERVICING CORPORATION

323 5TH STREET
EUREKA CA 95501

(800) 603-0836
Para Español, Ext. 2660 o 2643
8:00 a.m. – 5:00 p.m. Pacific Time
Main Office NMLS #5985
Branch Office NMLS #9785

April 18, 2018

DONAL MARTIN MCDONAGH
MICHELE RAWLS MCDONAGH
2416 SANDERS RIDGE
GERMANTOWN TN  38138

RE:  **New Loan Number:**
Old Loan Number:
Collateral: 2416 SANDERS RIDGE LANE; GERMANTOWN TN

### NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

Dear Customer:

The notice, which follows, is intended to inform you that the servicing of your mortgage loan has been assigned, sold or transferred.  If the above-referenced loan is a closed-end, first lien, 1-4 unit residential (e.g., homes, condominiums, cooperative units and mobile homes) mortgage loan, this notice is being provided to you under Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. §2605).  When a state law requires this notice, this notice is being provided to you under state law.  When neither Section 6 of RESPA nor state law requires this notice, this notice is being provided to you for your information.

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, has been assigned, sold or transferred from Shellpoint Mortgage Servicing to SN Servicing Corporation for SCIG Series III Trust, effective April 16, 2018.

The assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing.  Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.

Your present servicer is Shellpoint Mortgage Servicing, PO Box 10826, Greenville, SC 29603-0826. If you have any questions relating to the transfer of servicing from your present servicer call Customer Service at (800) 365-7107 Monday through Friday between 8:00 a.m. and 10:00 p.m. and Saturday between 8:00 a.m. and 3:00 p.m. Eastern Time.  This is a toll-free number.

Your new servicer will be **SN Servicing Corporation.**

The correspondence address for your new servicer is SN Servicing Corporation, 323 Fifth St, Eureka, CA 95501.

The toll-free telephone number of your new servicer is (800) 603-0836. If you have any questions relating to the transfer of servicing to your new servicer call Katie Greene at (800) 603-0836 Monday through Friday between 8:00 a.m. and 5:00 p.m. Pacific Time. You may access your account and make payments via our secure website at https://borrower.snsc.com.

The date that your present servicer will stop accepting payments from you is April 15, 2018.  The date that your new servicer will start accepting payments from you is  April 16, 2018.  Send all payments on or after April 16, 2018 to your new servicer.

**Make your payments payable to:**        SN Servicing Corporation

**Mail your payments to:**

The transfer of servicing rights may affect the terms of or the continued availability of mortgage life or disability insurance or any other type of optional insurance in the following manner: SN Servicing Corporation will **not** continue to accept your insurance payments as a part of your monthly loan payment nor will it be responsible for the continuation of any such optional insurance coverage.  You should take the following action to maintain coverage: contact your optional insurance carrier immediately for instructions on how to continue such optional insurance coverage.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. §2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. §2605) gives you certain consumer rights.  If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 5 Business Days of receipt of your request.  A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request.  If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to this address: SN Servicing Corporation, 323 Fifth St, Eureka, CA 95501.

Not later than 30 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute.  During this 30-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.  However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

You are hereby notified that this letter is being sent to you by SN Servicing Corporation, which is a debt collector. SN Servicing Corporation is attempting to collect a debt.  Any information obtained by us will be used for that purpose.  However, if you are in a bankruptcy proceeding or your debt has been discharged in bankruptcy, please read the next paragraph carefully for some important information.

*NOTICE TO ANY CUSTOMER IN BANKRUPTCY OR WHO HAS RECEIVED A DISCHARGE IN BANKRUPTCY:* Notwithstanding anything in this notice to the contrary, if you have filed a bankruptcy petition and there is either an "automatic stay" in effect in your bankruptcy case, or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally.  If these circumstances apply, this notice is not intended as a demand for payment from you personally.  Unless the Bankruptcy Court has ordered otherwise, however, please also note that despite any such bankruptcy filing, we do continue to retain whatever rights we hold in the property that secures the obligation.

A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer. A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by law to collect the debt.

**SN Servicing Corporation for SCIG Series III Trust**
Customer Service Department



**SERVICING CORPORATION**
323 5TH STREET
EUREKA CA 95501

(800) 603-0836
Para Español, Ext. 2660 o 2643
8:00 a.m. – 5:00 p.m. Pacific Time
Main Office NMLS #5985
Branch Office NMLS #9785

April 18, 2018

DONAL MARTIN MCDONAGH
MICHELE RAWLS MCDONAGH
2416 SANDERS RIDGE
GERMANTOWN TN  38138

RE: **New Loan Number:**
    Old Loan Number:
    Collateral: 2416 SANDERS RIDGE LANE; GERMANTOWN TN

As stated in previous correspondence, the servicing of your mortgage loan has been transferred from Shellpoint Mortgage Servicing to SN Servicing Corporation for SCIG Series III Trust effective April 16, 2018

If your loan is secured by real estate, please contact your insurance carrier to have the mortgagee clause changed to the following:

**SN Servicing Corp**
**ISAOA ATIMA**
**P.O. Box 35**
**Eureka, CA 95502**

Please have your insurance carrier forward a copy of your insurance policy with the mortgagee clause change to our Escrow Department at the address shown above.  If your property is located in a flood hazard zone, which starts with an "A" or "V", we will also require a copy of your flood insurance policy.

If you or your insurance carriers have any questions, please contact Katie Greene at (800) 603-0836 Monday through Friday between 8:00 a.m. and 5:00 p.m., Pacific Time.

You are hereby notified that this letter is being sent to you by SN Servicing Corporation, which is a debt collector. SN Servicing Corporation is attempting to collect a debt.  Any information obtained by us will be used for that purpose.  However, if you are in a bankruptcy proceeding or your debt has been discharged in bankruptcy, please read the next paragraph carefully for some important information.

*NOTICE TO ANY CUSTOMER IN BANKRUPTCY OR WHO HAS RECEIVED A DISCHARGE IN BANKRUPTCY:*  Notwithstanding anything in this notice to the contrary, if you have filed a bankruptcy petition and there is either an "automatic stay" in effect in your bankruptcy case, or you have received a discharge of your personal liability for the obligation identified in this letter, we may not and do not intend to pursue collection of that obligation from you personally.  If these circumstances apply, this notice is not intended as a demand for payment from you personally.  Unless the Bankruptcy Court has ordered otherwise, however, please also note that despite any such bankruptcy filing, we do continue to retain whatever rights we hold in the property that secures the obligation.

**SN Servicing Corporation for SCIG Series III Trust**
Escrow Department