IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| DONAL M. MCDONAGH, and<br>MICHELE R. MCDONAGH<br><br>    Plaintiffs,<br><br>v.<br><br>SCIG SERIES III TRUST,<br>SN SERVICING CORPORATION,<br>U.S. BANK TRUST NATIONAL<br>ASSOCIATION and<br>EDWARD RUSSELL, Substitute Trustee,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.  2:20-cv-02539-JMP-cgc |

**PLAINTIFFS' BRIEF IN SUPPORT OF RESPONSE
TO DEFENDANTS' MOTION TO DISMISS**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW, Plaintiffs Donal M. McDonagh and Michele R. McDonagh (hereinafter collectively referred to as "Plaintiffs" or the "McDonaghs") and hereby submit their Brief in Support of Response to SN Servicing Corporation ("SN Servicing") and U.S. Bank Trust National Association's ("U.S. Bank") (hereinafter collectively referred to as the "Defendants") Motion to Dismiss, and for cause of action would respectfully show the Court as follows:

**I.    INTRODUCTION**

1. The McDonaghs' claims stem from Defendants' actions and omissions as lender and servicer of the McDonaghs' loan for their home located at 2416 Sanders Ridge, Germantown, Tennessee 38138 (the "Property"). The McDonaghs financed the purchase of the

Property with a loan obtained by Trust One Bank ("Trust One") in the amount of $700,000 on August 29, 2007 ("Loan") and secured by a Deed of Trust ("DOT").

    2.    On July 20, 2012, the McDonaghs jointly filed a Chapter 13 Bankruptcy filing in the United States Bankruptcy Court in the Western District of Tennessee which listed the Loan and DOT. The Bankruptcy was successfully performed by the McDonaghs and discharged on July 13, 2018. During that time, the DOT was assigned three (3) separate times, ultimately being assigned to U.S. Bank as trustee for the SCIG Trust on or about April 16, 2018. Upon information and belief, SN Servicing immediately began servicing the Loan on behalf of U.S. Bank.

    3.    On June 24, 2020, the McDonaghs filed their First Verified Complaint ("Complaint"), together with their Fiat issuing a Temporary Restraining Order, against Defendants in Part II of the Chancery Court of Tennessee for the Thirtieth Judicial District at Memphis—asserting breach of contract, breach of the covenant of good faith and fair dealing, violations of the Fair Debt Collections Act ("FDCA"), violations of the Tennessee Consumer Protection Act ("TCPA"), violations of 12 U.S.C. §2601, and to enjoin foreclosure sale. The McDonaghs also sought that a jury be empaneled to act as finder of fact, the court issue a Notice of Lien Lis Pendens, and that they be awarded such other and further relief for which they are entitled.

    4.    Defendants removed this case to this Court on July 24, 2020, and filed their Motion to Dismiss ("Motion") on August 14, 2020.

    5.    The Court should deny Defendants' Motion because the McDonaghs alleged facts "sufficient to state a claim to relief that is plausible on its face." *Majestic Bldg. Maint., Inc. v. Huntington*

*Bancshares Inc.*, 864 F.3d 455, 458 (6th Cir. 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## II. STANDARD OF REVIEW

6.  Motion to dismiss under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") are **disfavored and rarely granted**. *Harris v. Am.*, 198 F.3d 245 (6th Cir. 1999) (unpublished) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); see also *S. Christian Leadership Conference v. Supreme Court*, 252 F.3d 781, 786 (5th Cir. 2001); *Lone Star Indus., Inc. v. Horman Family Trust*, 960 F.2d 917, 920 (10th Cir. 1992); *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986).

7.  A motion to dismiss under Rule 12(b)(6) does not present the issue of whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence in support of the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test." *Id.* Rather, "a complaint should not be dismissed for failure to state a claim unless it appears **beyond doubt** that the plaintiff can prove **no** set of facts in support of his claim which would entitle him to relief." *Gibson*, 355 U.S. at 45-46.

8.  To survive a motion to dismiss, Plaintiffs must allege enough facts "to state a claim to relief that that is **plausible on its face**." *Twombly*, 550 U.S. 544, 570.

9.  "A claim has facial plausibility when the plaintiff pleads **factual content** that allows the court to draw the **reasonable inference** that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

10. Furthermore, the pleading standard announced by Fed. R. Civ. P. 8 does **not** require "detailed factual allegations"; rather, it **only** demands that the pleading be more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

11. "In reviewing the allegations, this Court construes the complaint in a light most favorable to the plaintiff, accepting all of the factual allegations as true and determines whether the plaintiff can prove **no** set of facts in support of his claims that would entitle him to relief." *Arrow v. Fed. Reserve Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004).

12. In other words, a complaint need not set forth all the facts upon which a claim is based; rather, a short and plain statement of the claim is **sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests**. *Twombly*, 550 U.S. at 545.

### III. ARGUMENT AND AUTHORITIES

13. Defendants insist that the McDonaghs' claims are not based on any factual allegations, but a closer look at the Complaint shows the McDonaghs pleaded enough facts to establish claims that are plausible in their face. *See infra* ARGUMENT A-E.

    **A.  THE COURT SHOULD DENY DEFENDANTS' MOTION BECAUSE THE MCDONAGHS' PETITION FOR A PERMANENT INJUNCTION IS NOT MOOT**

14. The doctrine of mootness then "requires that there be a live case or controversy at the time that a federal court decides the case." *Sullivan v. Benningfield*, 920 F.3d 401, 407 (6th Cir. 2019) (quoting *Burke v. Barnes*, 479 U.S. 361, 363 (1987).

15. Ultimately, the "test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Sullivan*, 920 F.3d at 410 (quoting *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir.1997) (en banc) (internal quotations and citations omitted)). "The heavy burden of demonstrating mootness rests on the party claiming mootness." *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 531 (6th Cir. 2001).

16. Defendants insist that the McDonaghs' petition for an injunction to enjoin foreclosure of the Property is moot as the original scheduled date for the foreclosure sale, June 24, 2020 passed without the foreclosure sale occurring. The McDonaughs requested a permanent injunction to exceed beyond June

24, 2020 based on their factual allegations of Defendants' wrongful acts and related claims. The parties positions have not changed; under Tennessee law and pursuant to the DOT, Defendants can initiate a non-judicial foreclosure sale of the Property at any time absent judicial intervention.

17. Additionally, Defendants claim that their voluntary act of not rescheduling the non-judicial foreclosure makes the McDonaghs' petition to prevent them from doing so moot. However, voluntary cessation of a challenged practice only moots a case in the "rare instance" where "subsequent events make it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 473 (6th Cir. 2008); *Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 530–31. As with mootness in general, Defendants bear a "heavy" burden to demonstrate mootness in the context of voluntary cessation. *Akers v. McGinnis*, 352 F.3d 1030, 1035 (6th Cir. 2003).

18. The Temporary Restraining Order granted by the Chancery Court preventing the foreclosure sale of the Property is no longer in effect due to the disposition of the matter in that court and removal to federal court, and the Defendants propose that they have voluntarily refrained from proceeding with non-judicial foreclosure sale of the Property. While the date set by trustee for the original foreclosure sale has passed, Tennessee allows non-judicial foreclosure and nothing, absent an order of this Court, would prevent Defendants from resetting the foreclosure sale date and selling the Property. Without adjudication on the McDonaghs' petition for injunction and other claims of Defendant's wrongful conduct, there is absolutely no reason to believe Defendants' will not proceed with the non-judicial foreclosure sale.

19. An exception to mootness applies when a challenged action is "capable of repetition yet evading review." *Wilson v. Gordon*, 822 F.3d 934, 945 (6th Cir. 2016). For this exception to apply, "a challenged action must satisfy two requirements. First, it must be too short in duration to be fully litigated before it ceases. Second, there must be a reasonable expectation that the same parties will be subjected to

the same action again." *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 430 (6th Cir. 2013).

20. In the current matter, the non-judicial foreclosure sale date of June 24, 2020 was scheduled on the exact same day that the Chancery Court granted a Temporary Restraining Order staying the sale. In the Complaint, the McDonaghs pray for a permanent injunction from further publishing or undertaking any efforts toward foreclosure on the Property pursuant to the DOT. Mere hours between the scheduled sale and issuance of the Temporary Restraining Order was not a sufficient amount of time for the McDonaghs' request for permanent injunction to be fully adjudicated based on the facts alleged in the Complaint. Further, if not enjoined by this Court, there is little doubt that Defendants will not carry out the non-judicial foreclosure sale, depriving Plaintiff of its rights.

21. Viewing the facts in the light most favorable to the McDonaghs, this Court should deny Defendants' Motion.

**B.   THE COURT SHOULD DENY DEFENDANTS' MOTION BECAUSE THE MCDONAGHS' BREACH OF CONTRACT CLAIM AND BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM ARE PLAUSIBLE ON THEIR FACE, AND THUS THE MCDONAGHS ARE ENTITLED TO RELIEF.**

22. Defendants' first theory is that the McDonaghs cannot successfully assert a breach of contract claim against SN Servicing because "the McDonaghs has (sic) not alleged that any contract exists with SN Servicing." However, U.S. Bank is a party to the Loan and DOT as the lender by assignment, and SN Servicing is in contract with U.S. Bank to service the McDonaghs' Loan. Furthermore, the McDonaghs, as borrowers, can pursue a breach of contract claim against SN Servicing as their loan servicer. *See Ford v. Specialized Loan Servicing, LLC,* No. 2:16-CV-02414-JPM-TMP, 2018 WL 2363576, at *10 (W.D. Tenn. Mar. 5, 2018) (allowing a borrower to pursue a breach of contract claim against a loan servicer by denying the loan servicer's Rule 12(b)(6) motion to dismiss for failure to state a claim). While SN Servicing is not on the note or the DOT, SN Servicing is an assignee of the note, just like the securitization trust, and that provides the privity needed for a breach of contract action.

23. Defendants then try to sidestep their complete disregard for the DOT by arguing the McDonaghs "failed in multiple respects to plead a proper cause of action against U.S. Bank."

24. Defendants first assert that the McDonaghs failed to reference specific sections or attach the DOT to the Complaint, and Defendants include the DOT as Exhibit A to their Motion. Pursuant to Rule of Civil Procedure 12(d), "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). In analyzing a Rule 12(b)(6) motion to dismiss, "a court may consider exhibits attached [to the complaint]" including "exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims therein." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (alteration in original) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)) (internal quotation marks omitted). This Court has found that where a Defendant has attached the operative contract in a breach of contract case to its Motion to Dismiss, it can easily be inferred that references to said contract in plaintiff's complaint are references to that document and central to plaintiff's breach of contract claim, and the Court may consider the contract properly before the court and consider it in analyzing Defendants' Motion to Dismiss. See *LeBlanc v. Bank of Am., N.A.*, No. 2:13-CV-02001-JPM-TMP, 2013 WL 3146829, at *21-22 (W.D. Tenn. Jun. 18, 2013).

25. Defendants next attempt to discredit the McDonaghs' breach of contract pleading by representing that the McDonaghs do not plead facts that are very clearly in the Complaint. Defendants incorrectly state that the entirety of the McDonaghs' breach of contract claim is contained in paragraphs 40 and 41 of the Complaint, completely ignoring the first paragraph under the breach of contract header in the Complaint, paragraph 39. Paragraph 39 of the Complaint is as follows: "Plaintiffs hereby incorporate and adopts paragraph 1-38 as if herein copied verbatim." This language encompasses and adopts the preceding 12 pages of the Complaint whereby the McDonaghs detail the acts and abuses of the Defendants, including a monthly payment increase without cause and the implementation of arbitrary fees and charges which were billed by the Defendants, who admittedly had no knowledge themselves as to

what the charges and fees represented both at the time they were billed and up to the filing of the Complaint.

26.     The essential elements of a breach of contract claim under Tennessee law include (1) the existence of a contract, (2) breach of the contract, and (3) damages which flow from the breach. *Life Care Ctrs. of Am. v. Charles Town Assocs. Ltd. P'ship*, 79 F.3d 496, 514 (6th Cir. 1996).

27.     The Complaint was clear: the McDonaghs paid the agreed to mortgage payments timely and in full during the pendency of their Chapter 13 bankruptcy plan from July 2012 to July 2018. During the pendency of the bankruptcy, in April 2018, SN Servicing on behalf of U.S. Bank began sending debt collection notices to Plaintiffs. However, the DOT was not assigned to U.S. Bank until at least September 21, 2018, although it was represented to the Bankruptcy Court and Defendants to have occurred prior to the discharge of the bankruptcy. Immediately following the discharge of the bankruptcy, in July 2018, Defendants began to demand a monthly payment that exceeded the amount agreed to in the contract, or any modification thereof, without any accounting or reasoning whatsoever in violation of the DOT; refused to accept the McDonaghs monthly payments without any cause or explanation in violation of the DOT; and failed to break down additional fees charged to the McDonaghs, including the increased monthly payments, while admitting that they did not have the information from a prior servicer of the Loan necessary to even break down, much less assess, the fees owed.

28.     Tennessee law imposes a duty of good faith and fair dealing in the performance of every contract. *Hometown Folks, LLC v. S&B Wilson, Inc.,* 2011 WL 2566825 at *4 (6th Cir. 2011); see, e.g., *Lamar Adver. Co. v. By–Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009). The purpose of this implied covenant is: "(1) to honor the reasonable expectations of the contracting parties and (2) to protect the rights of the parties to receive the benefits of the agreement into which they entered." *Lamar Adver. Co.*, 313 S.W.3d 791. The duty of good faith and fair dealing requires parties to a contract to conduct themselves fairly and responsibly. *S&B Wilson, Inc.,* 2011 WL 2566825 at *6; see, e.g., *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn.Ct.App.1995) ( "[T]here is an implied undertaking

in every contract on the part of each party that he will not intentionally or purposely do anything ... which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." (internal quotation marks and citation omitted)). Parties have a duty of good faith and fair dealing not only in executing the transaction ultimately contemplated by the contract, but also in fulfilling the preconditions and contingencies set forth in the contract. *Id.* Because the nature of the duty of good faith and fair dealing depends on the contract at issue, "courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable." *TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn.Ct.App.1987).

29.     In *S&B Wilson, Inc.*, the 6th Circuit Court of Appeals found, under an admittedly deferential standard of review similar to that of a 12(b)(6) motion, that where a party had the right under a contract to terminate an agreement and did so accordingly, that same party could have breached the duty of good faith and fair dealing absent a separate breach of the contract and affirmed that a reasonable jury could have found as much. *S&B Wilson, Inc.,* 2011 WL 2566825 at *6-7.

30.     Defendants' assertion that there cannot be a successful action for breach of an implied covenant of good faith and fair dealing in a contract without a corresponding breach of contract claim under Tennessee law is incorrect as the 6th Circuit has precisely found the opposite in *S&B Wilson, Inc* where a contract was found to have been properly terminated by a party and that same party was found to have breached the implied covenant of good faith and fair dealing in said contract. *S&B Wilson, Inc.,* 2011 WL 2566825 at *6-7. Plaintiffs asserted in their Complaint that Defendants impeded their rights under the DOT by unjustifiably increasing monthly payments and failing to address in any way or account for misapplication of funds and improper and unfounded charges. These acts, when seen in a light most favorable to the McDonaghs as is the Rule 12(b)(6) standard, amount to a breach of the implied covenant of good faith and fair dealing because the Defendants acts breached express duties under the DOT, any modification thereof, and the Note establishing the amount of the McDonaghs' payments. Based on the

facts alleged and Tennessee law, it is not beyond doubt that the plaintiff could prove a set of facts in support of the claim that would entitle them to relief.

31. Viewing the facts in the light most favorable to the McDonaghs, this Court should deny Defendants' Motion.

### C. THE COURT SHOULD DENY DEFENDANTS' MOTION BECAUSE THE MCDONAGHS' CLAIM UNDER THE FDCPA IS PLAUSIBLE ON ITS FACE, AND THUS THE MCDONAGHS ARE ENTITLED TO RELIEF.

32. In construing the definition of "debt collector" under 15 U.S.C. § 1692a(6), the Sixth Circuit has found that a debt collector "includes any non-originating debt holder that . . . acquired a debt in default." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012). It has further found that under the FDCPA, "debt collector" also includes the enforcement of security interests, finding that the term liberally applies even to those only engaged in repossession activities under a lien, "[15 U.S.C. § 1692a(6)] applies to those whose only role in the debt collection process is the enforcement of a security interest." *Glazer v. Chase Home Finance LLC*, 704 F.3d 453, 464 (6th Cir. 2013) (quoting *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378 (4th Cir. 2006)). In the Complaint, the McDonaghs plead that Defendants came to hold and service the McDonaghs debt while the McDonaghs were performing under a Chapter 13 Bankruptcy plan and that the DOT is the operative document as to the agreement. By the terms of the DOT, the McDonaghs were in default merely by filing for Chapter 13 Bankruptcy protection.

33. Defendants contend that the McDonaghs make conclusory statements regarding the status of SN Servicing as a "third party debt collector" or U.S. Bank being engaged in "debt collection efforts;" however, the McDonaghs, in addition to specifically labeling the Defendants as debt collectors, assert in the Complaint that the Defendants performed particular actions that made them debt collectors under the statute, that they acquired the collection interests and servicing rights to the Loan and DOT while the McDonaghs were in bankruptcy, thus in default, and attempted to collect the debt by demanding payment via phone, email, and mail. Where the allegations in a FDCPA claim specifically state that defendant

performed a particular action, those statements are not conclusory. See *Pearson v. Specialized Loan Servicing, LLC*, No. 1:16-CV-318, 2017 WL 3158791, at *4 (E.D. Tenn. July 24, 2017); see also *Riley v. Kurtz*, 893 F. Supp. 709, 721 (E.D. Mich. 1995). The facts pled by the McDonaghs regarding Defendants acts meet the statutory definition of a "debt collector."

34. Next, the Defendants argument that the McDonaghs failed to state false, deceptive, or misleading statements under 15 U.S.C. § 1692(e) because the Complaint does not state that U.S. Bank didn't hold the underlying promissory note to the mortgage does not address every allegation of false, deceptive, or misleading statement plead by the McDonaghs and misinterprets the one allegation it attempts to negate.

35. Under the FDCPA, false or misleading representations include: false representation of the character, amount, or legal status of any debt as well as the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. 15 U.S.C. § 1692(e)(2)(A), 1692(e)(10).

36. The McDonaghs specifically allege several times in the Complaint that the Defendants increased monthly payment amounts without reason and attempted to collect that amount. In Exhibit IX of the Complaint, the McDonaghs show communications made to Defendants whereby they provide calculations showing how the Defendants increased payment amount was incorrect. The McDonaghs allege in the Complaint that despite numerous requests of the Defendants to clarify the monthly payment amounts, they were rebuffed each time, and the McDonaghs attach several exhibits of communications with the Defendants evidencing the same. The McDonaghs clearly assert that the Defendants made false representations of the amount of the debt, and that Defendants continued to attempt collect that amount when questioned even after the Defendants' representative confirmed that they did not know the correct amount stating "[d]ue to unfortunate circumstances I do not have the breakdown of the fees at this time to send you. We are having to work with the previous servicing companies to get some documentation." These pleaded false representations alone are enough to state a claim under the FDCPA.

Plaintiffs' Brief in Support of Response to Defendants' Motion to Dismiss        11
*McDonagh*

37.     The McDonaghs also plead in the Complaint that the Defendants, in attempts to collect the debt, falsely represented both to them and the U.S. Bankruptcy Court that the debt had been transferred to the Defendants when it in fact had not been transferred. The Complaint provides that the assignment of the DOT occurred months after the Defendants represented to the Bankruptcy Court and to the McDonaghs that they were collecting the debt and enforcing the mortgage lien. The Defendants contend that their deceptive and false communication does not explicitly state that the assignment was executed, but that the "Loan was transferred to U.S. Bank and SN Servicing is the new servicer" and that assignments of a deed of trust are not required with the transfer of a note. However, Defendants do not assert or provide any documentation showing that any conveyance or transfer of the promissory note occurred prior to their April 2018 representation of such to the Bankruptcy Court and the McDonaghs or at all. Construing the Complaint in a light most favorable to the McDonaghs and accepting the factual allegation that Defendants April 2018 was false as alleged, the court must find that the McDonaghs can prove a set of facts in support of their FDCPA claim that would entitle them to relief.

38.     Defendants claim that their communication sent to the Bankruptcy Court and the McDonaghs on April 18, 2018 was not a communication to collect a debt, thus cannot be the initial communication as asserted in the Complaint and be used to adjudge whether the McDonaghs met the thirty day response requirement of 15 U.S.C. § 1692g(b). However, the second page of the April 18, 2018 communication, as included in the Complaint as Exhibit II, states "SN Servicing Corporation is attempting to collect a debt." The McDonaghs allege that they began requesting complete accountings of the alleged debt in May 2018. Viewing those facts in a light most favorable to the McDonaghs, the McDonaghs plead a set of facts whereby they meet the timing requirements of 15 U.S.C. § 1692g(b).

39.     The Defendants then claim that the SN Response, dated January 8, 2019, suffices as verification of the debt under 15 U.S.C. § 1692g(b). However, in between April 2018 and January 2019, Defendants did not cease their attempts to collect the debt while collecting information for the verification in violation of the statute, refused to accept payments from the McDonaghs during that time, and the

monthly payment amount that Defendants list on the payoff statement, while stating an incorrect due date of January 1 is the amount that the McDonaghs had been asserting was correct for months, $5.992.45 instead of the $6,201.79 monthly payment demanded since July 2018. "The verification provision must be interpreted to provide the consumer with notice of how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment obligation." *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785-86 (6th Cit. 2014). When the dispute is as to the calculation of monthly payments, and the verification fails to address the calculation, it is not enough information to sufficiently dispute the payment obligation. In this instance, not only are the calculations not provided, the alleged verification states the monthly payment as being due two years prior for the same amount claimed by the McDonaghs all along.

40. Defendants' argument that a statutory cap of $1,000 applies if there is a finding of an FDCPA violation is not proper for a Rule 12(b)(6) motion to dismiss as the Motion to Dismiss does not put at issue whether a plaintiff will ultimately prevail. Nonetheless, in the Complaint, the McDonaghs plead for both actual and statutory damages pursuant to the FDCPA based on the allegations as stated above, and Defendants' argument fails to acknowledge the entirety of the statute. 15 U.S.C. § 1692k(a)(1) provides for "any actual damages sustained by such person as a result of such failure." The McDonaghs expressly state in their Complaint that the current suit was necessitated to stop foreclosure based upon Defendants FDCPA violation and that they have incurred ongoing damages due to those acts, the largest of which are legal fees and costs. Defendants also fail to acknowledge that 15 U.S.C. § 1692k(a)(3) provides for the recovery of "the costs of the action, together with a reasonable attorney's fee as determined."

41. Viewing the facts in the light most favorable to the McDonaghs, this Court should deny Defendants' Motion.

      **D.**    **THE COURT SHOULD DENY DEFENDANTS' MOTION BECAUSE THE MCDONAGHS' CLAIM UNDER THE TCPA IS PLAUSIBLE ON ITS FACE, AND THUS THE MCDONAGHS ARE ENTITLED TO RELIEF.**

42. The Defendants claim that the McDonaghs' TCPA claim does not apply to this matter because, "the TCPA does not apply to allegedly deceptive conduct in foreclosure proceedings" and then fail to address the misrepresentation and deceptive act central to the McDonaghs' Complaint: the unilateral increase of the incorrect monthly payment amount and disregard for uncovering the actual calculation of that amount. Defendants' attempts to collect the incorrect monthly payment amount with willful indifference to correcting the error and knowing misrepresentations to the McDonaghs and the Bankruptcy Court regarding their status as rightful owner of the Loan and DOT are overt acts of deception by the Defendants pleaded with specificity in the McDonaghs' Complaint.

43. The allegedly "well established" principle annunciated by the Defendants that the TCPA does not apply to allegedly deceptive conduct in foreclosure proceedings is a narrow holding from a matter that is wholly different from the facts alleged by the McDonaghs in the Complaint. In *Jones v. BAC Home Loans Servicing, LP*, No. W2016-00717-COA-R3-CV, 2017 WL 2972218, at *8 (Tenn. Ct. App. July 12, 2017), the TCPA claim was "predicated on the fact that foreclosure took place despite the alleged promise to forbear made by [defendant's] representative." The McDonaghs do not allege a TCPA violation in the foreclosure proceedings, but rather the deceptive and knowingly false acts of the Defendants prior to any foreclosure attempt. Rather than claiming an oral promise as the deceptive act in their Complaint, the McDonaghs plead that the Defendants made false and deceptive statements in filings to the Bankruptcy Court as well as in attempts to collect a knowingly false amount from the McDonaghs, which they still have not been able to explain to this day. The McDonaghs allege that they have suffered ongoing economic damages resulting from the Defendant's deceptions, including the legal costs and fees associated with protecting their interest in their real property.

44. Viewing the facts in the light most favorable to the McDonaghs, this Court should deny Defendants' Motion.

E. **THE COURT SHOULD DENY DEFENDANTS' MOTION BECAUSE THE MCDONAGHS' CLAIM UNDER RESPA IS PLAUSIBLE ON ITS FACE, AND THUS THE MCDONAGHS ARE ENTITLED TO RELIEF.**

45. Defendants' proposition that their failure to respond to the McDonaghs' Notices of Error and Qualified Written Request ("QWR") is not a violation of 12 U.S.C. § 2605(e) because the QWR was not sent to their designated QWR address must fail because SN Servicing involved counsel prior to sending the QWR.

46. The McDonaghs' June 17, 2019 letter, September 24, 2019 letter, and December 3, 2019 letter (the "Letters"), all included as Exhibit IX in the Complaint, each qualify as a QWR. "RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011). The Letters were written correspondences on a medium not supplied by the servicer, which included the name and account of the borrower, and sufficiently detailed for the servicer distinct types of information sought in its numbered paragraphs, which satisfies pleading requirements under RESPA concerning QWR's.  See *Hittle v. Residential Funding Corp.*, Case No. 2:13-cv-353, 2014 WL 3845802, at *5 (S.D. Ohio Aug. 5, 2014). Additionally, each letter concerns fraud or mistake with regards to the past due amount, which, accordingly, concerns the servicing of the loan. *Cf. Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 (9th Cir. 2012). Further, the McDonaghs have pleaded that they have yet to receive a satisfactory response by the Defendants to the QWR issues, and Defendants have not disputed this fact.

47. Any argument that the QWR was improperly sent to the wrong address for SN Servicing must fail because SN Servicing had engaged an attorney to represent them in the matter; therefore, the QWR's were properly sent to SN Servicing's counsel. The McDonaghs plead, and include as Exhibit VIII in the Complaint, that on January 8, 2019, SN Servicing contacted the McDonaghs via their counsel, William Fogelman ("SN Counsel"). The Letters were all sent to SN Counsel after he identified himself as the attorney for SN Servicing and had been engaged with the McDonaghs concerning the issues. As SN

Counsel held himself out to be the proper contact regarding the McDonagh's issues with the monthly payment amounts and lack of information about the alleged debt, it would be inequitable to find that SN Counsel could not receive the QWR in this circumstance.

48. Defendants' argument regarding statutory damages for RESPA violations is improper for a Rule 12(b)(6) motion as it does not question whether damages are properly pleaded in the Complaint, but prematurely argues the amount of damages that should be awarded to the McDonaghs. Therefore, the question of appropriate damages under RESPA should be reserved for trial.

49. Viewing the facts in the light most favorable to the McDonaghs, this Court should deny Defendants' Motion.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs Donal M. McDonagh and Michele R. McDonagh respectfully request that Defendants SN Servicing and U.S. Bank's Motions to Dismiss be denied.

Dated: August 31, 2020

    Respectfully Submitted,

    /s/ Derek E. Whitlock
    Derek E. Whitlock (Tenn. BPR No. 29927)
    HARKAVY SHAINBERG KAPLAN PLC
    6060 Poplar Ave., Suite 140
    Memphis, TN  38119
    Direct phone:  (901) 866-5344
    Direct fax:  (901) 866-5419
    Email: dwhitlock@harkavyshainberg.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2020, a true and correct copy of the foregoing document has been mailed U.S. Post to the following:

SCIG Series III Trust
C/O – Trustee - U.S Bank Trust National Association
300 East Delaware Avenue, 8th Floor
Wilmington, Delaware 19801

U.S Bank Trust National Association
300 East Delaware Avenue, 8th Floor
Wilmington, Delaware 19801

SN Servicing Corporation
C/O - Registered Agent -The Prentice-Hall Corporation System, Inc.
 2908 Poston Avenue
Nashville, Tennessee 37203-1312.

Edward D. Russell, Esq, - Substitute Trustee
 8 Cadillac Dr., Ste. 120, Creekside Crossing III
Brentwood, TN 37027

/s/ Derek E. Whitlock
Counsel for Plaintiffs