**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| **DONAL M. MCDONAGH, and**<br>**MICHELE R. MCDONAGH** ) ) ) | |
| )<br>**Plaintiffs,** ) | |
| )<br>**v.** ) | **No.  2:20-cv-02539-JMP-cgc** |
| )<br>**SCIG SERIES III TRUST,** )<br>**SN SERVICING CORPORATION,** )<br>**U.S. BANK TRUST NATIONAL** )<br>**ASSOCIATION,** ) | |
| )<br>**Defendants.** )<br>) | |

**SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF
THE COVENANT OF GOOD FAITH AND FAIR DEALING, VIOLATIONS OF THE
FAIR DEBT COLLECTION PRACTICES ACT,
VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT
AND VIOLATIONS OF 12 U.S.C §2601**

**COMES NOW** Plaintiffs, Donal M. McDonagh and Michele R. McDonagh

("Plaintiffs"), by and through counsel, Harkavy Shainberg Kaplan PLC, and for their Second

Amended Complaint for Breach of Contract, Breach of the Covenant of Good Faith and Fair

Dealing, Violations of the Fair Debt Collection Practices Act, Violations of the Tennessee

Consumer Protection Act and Violations of 12 U.S.C. §2602, would show the Court as follows:

<u>**PARTIES**</u>

1.      Plaintiffs, Donal M. McDonagh and Michele. R. McDonagh, are adult resident

citizens of Shelby County. Tennessee.

1

2.      Upon information and belief, Defendant, SCIG Series III Trust ("SCIG") is alleged to be the holder and current assignee of the related Promissory Note ("Note") and Deed of Trust executed by the Plaintiffs in favor of Trust One related to the real property located at 2416 Sanders Ridge Ln, Germantown, Tennessee 38138. The state of origin for SCIG is unknown but they may be served with service of process through its trustee, U.S. Bank Trust National Association, at its principal place of business located at 300 East Delaware Avenue, 8th Floor, Wilmington, Delaware 19801.

3.      Upon information and belief, Defendant U.S. Bank Trust National Association ("U.S. Bank") is a corporation that is organized in and exists under the laws of Delaware, but is not recognized within the State of Tennessee. U.S. Bank is the trustee for the SCIG Trust. U.S. Bank may be served with service of process at its principle place of business located at 300 East Delaware Avenue, 8th Floor, Wilmington, Delaware 19801

4.      Upon information and belief, Defendant, SN Servicing Corporation ("SN"), is a third-party debt collector organized in and existing under the laws of the State of Alaska and recognized within the State of Tennessee, with its principal place of business located in Baton Rouge, Louisiana. SN's Tennessee Registered Agent is The Prentice-Hall Corporation System, Inc. located at 2908 Poston Avenue, Nashville, Tennessee 37203-1312. Upon information and belief, SN is under contract with U.S. Bank to service the Plaintiffs' loan.

5.      Defendant, Edward Russell ("Trustee") is the substitute Trustee under the aforementioned deed of trust pursuant to which SN and U.S. Bank seek to foreclose on Plaintiffs' interests in the real property located at 2416 Sanders Ridge Ln., Germantown, Tennessee 38138 (the "Property"), and the Trustee is sued only in that capacity. It is believed

Edward D. Russell may be served with service of process at 8 Cadillac Dr., Ste. 120, Creekside Crossing III, Brentwood, TN 37027.

## JURISDICTION AND VENUE

6.      This Court has federal question jurisdiction over this Second Amended Complaint pursuant to 28 U.S.C. § 1331 per the issues and claims arising under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 26001 *et seq.*, as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the issues and claims arising under Tennessee state law.

7.      Venue is proper in this Court for purposes of removal under 28 U.S.C. § 1441(a).

## FACTS

8.      On or about August 29, 2007, the Plaintiffs acquired title to the Property and executed a promissory note ("Note"), security agreement, and deed of trust (collectively "DOT") for the benefit of Trust One Bank. *See the DOT attached herein as **Exhibit I**.*

9.      On July 20, 2012, the Plaintiffs jointly filed a Chapter 13 Bankruptcy filing in the United States Bankruptcy Court in the Western District of Tennessee under the case number 12-27642 ("Bankruptcy").

10.     The DOT was listed within the petition for the Bankruptcy. The Bankruptcy was successfully performed by the Plaintiffs resulting in a discharge ordered by Chief Bankruptcy Judge David M. Kennedy on July 13, 2018. *See the Chapter 13 Bankruptcy Plan, Claims Register and Order of Discharge attached collectively herein as **Exhibit II**.*

3

11.     Upon information and belief, the DOT was assigned three (3) separate times with the DOT, ultimately, being assigned to U.S. Bank as trustee for the SCIG Trust on or about September 21, 2018.  To date, neither SN, U.S. Bank, nor SCIG Trust have provided Plaintiffs a copy of the alleged assignment, conveyance, or sale of the entirety of the DOT.

12.     Upon information and belief, the Plaintiffs made all of their post-petition mortgage payments directly to the alleged DOT holders during the Bankruptcy. At no time did any alleged holder/assignee of the DOT ever inform the Plaintiffs of a default or file a Notice of Default with the United States Bankruptcy Court in the Western District of Tennessee.

13.     In April of 2018, while still under the guidance of the United States Bankruptcy Court, SN began sending debt collection notices to the Plaintiffs related to the DOT. This was the first Plaintiffs learned of SN, SCIG Trust, U.S. Bank or their alleged assignment of the DOT. SN's correspondence made it explicitly clear that it was unaware of the fact the Plaintiffs involved in the Bankruptcy proceeding.  *See attached Notice of Assignment falsely filed with the United States Bankruptcy Court in the Western District of Tennessee and provided to the Plaintiffs herein attached as **Exhibit III**.*

14.     At no time did Trust One Bank or any subsequent alleged assignees to the DOT inform the Bankruptcy Court or Plaintiffs of any default in the ongoing mortgage payments. During the administration of the Bankruptcy there were two (2) Notices of Post-Petition Mortgage Fees, Expenses, and Charges filed with the Bankruptcy Court ("Notices"); the first for $15.00 on December 27, 2017 and the second for $45.00 on May 2, 2018 for property inspection fees presumably related to the assignments of the DOT. *See Notices attached herein collectively as **Exhibit IV**.*

4

15.     While Plaintiffs were made to believe as early as April 2018 through SN's communications that SN, SCIG Trust, and U.S. Bank were the lawful holders and/or servicers of the DOT, Plaintiffs would later learn that that the DOT was not assigned to SCIG Trust until September 21, 2018; thus, all prior communications from SN on behalf of SCIG Trust and U.S. Bank were untrue and induced Plaintiffs to provide funds and confidential information to unrelated third-parties. *See assignment to SCIG Trust recorded in the Shelby County Registers Office herein included as **Exhibit V**.*

16.     Upon being notified by SN of the SCIG Trust being the holder of the DOT in April 2018, the Plaintiffs began making their monthly mortgage payments to SN, as directed, and requested a re-finance to take advantage of the historically low interest rates.

17.     On or about May 1, 2018, Plaintiffs prepared and provided a re-financing application for SN to review and approve seeking to take advantage of the lowered interest rates. SN reviewed but denied the request stating their income-to-debt ratio was insufficient. Plaintiffs were told this was due to the ongoing Bankruptcy payments required by the Bankruptcy Trustee. *See SN letter dated May 17, 2018 herein attached as **Exhibit VI**.*

18.     In May of 2018 Plaintiffs, based upon inconsistent verbal communications with SN representatives, became concerned that SN did not have correct and/or complete accountings related to the DOT and began requesting complete accountings of the alleged debt.

19.     In July of 2018, SN began demanding a new monthly payment with an increase from $5,992.45 to $6,201.79 with no accounting or reasoning whatsoever. Allegedly holding servicing rights and the collection interest on the loan, SN, on behalf of U.S. Bank and SCIG as holders of the DOT, began attempting to collect Plaintiff's debt by demanding payments via

phone, email, and mail. Plaintiffs continued requests for complete accountings, and now, reasons for payment increases were ignored by SN, U.S. Bank, and SCIG.

20.     On or about August 1, 2018, subsequent the Bankruptcy discharge, Plaintiffs submitted a second re-financing package for review and approval to SN. SN denied this second application stating that the Plaintiffs could afford the ongoing payment, and again, denied the Plaintiffs attempt to refinance. *See SN letter dated August 16, 2018 herein attached as **Exhibit VII***.

21.     In response to Plaintiffs continued demands for accountings and finally, in September of 2018, SN representative Casey Edwards informed the Plaintiffs that, "Due to unfortunate circumstances I do not have the breakdown of the fees to send at this time to you. We are having to work with the previous servicing companies to get some documentation".

22.     So, to be clear, six (6) months after falsely telling the Plaintiffs that SCIG Trust was the lawful holder of the DOT, receiving monies from the Plaintiffs and demanding additional monies from the Plaintiffs, SN's representative, Casey Edwards, admits that SN did not have the documents necessary to evidence the monies being demanded by SN. To date, SN has yet to produce a true and complete accounting for the debts it alleges. *See email stream between Plaintiffs and SN which includes the specific email from SN representative Casey Edwards email dated September 6, 2018 herein attached as **Exhibit VIII***.

23.     Plaintiffs payment for the month of August 2018 was returned to them from SN. Plaintiffs requested advisement on retuned payments and SN informed them in September of 2018 that they would no longer accept any payments made by the Plaintiffs.

24.     The first attempt by SN to provide any satisfactory response to the numerous debt verification request by the Plaintiffs took place on January 8, 2019. The written response and production by SN included a copy of the original Line of Credit document signed by the Plaintiffs and a "Payoff Statement" of the alleged debt. The debt-verification did not include an accounting of the debt, a copy of the assignment of the DOT to the SCIG Trust, nor an explanation of the premium increase demanded by SN. *See letter from SN representative dated January 8, 2019 attached herein as **Exhibit IX**.*

25.     Plaintiffs have disputed specifically and multiple times the increase in the related premium from $5992.45 to $6,201.79, the unknown and/or accounted for "Prior Servicer Escrow Adv" of $36,224.37, the unknown and/or accounted for "Prior Servicer Corp. Adv" of $19,906.05, the "Miscellaneous" described as "attorney fees" of $2,676.90, the continuing late charges accruing due to SN's refusal to accept payments from the Plaintiffs, and all other unsupported and unverified charges that may be included on Plaintiffs accountings that SN refuses to provide. *See some of the multiple written attempts to dispute and seek clarification for the alleged disputed debts herein attached as **Exhibit X.***

26.     Despite U.S. Bank and SN's inability to validate the Plaintiff's alleged debt, SN has chosen to disregard the continued requests of Plaintiffs to engage in good faith communications and attempts to resolve the disputes as to the alleged debt. Rather, SN has, knowingly and willingly, chosen to ignore Plaintiffs debt validation requests made pursuant to 15 U.S. Code §1692 et seq. and proceed with foreclosure of the related Property. The foreclosure sale is currently scheduled for June 24, 2020.

27.     From June of 2018 to present the Plaintiffs have requested a complete accounting for the alleged debts demanded by SN, and to date, SN  has continued to refuse and/or fail to provide any semblance of a complete accounting.

28.     Plaintiffs have, in accordance with Tennessee Code Annotated § 29-23-20 served notice on the Defendants and the Trustee of its intention to appear before this court seeking among other relief as stated below, an injunction to stay the Defendants' foreclosure sale of the DOT pending a determination of the parties' rights.

<u>**COUNT I – BREACH OF CONTRACT**</u>

29.     Plaintiffs hereby incorporate and adopt paragraphs 1-28 as if herein copied verbatim.

30.     U.S. Bank, acting for SCIG, is a party to the DOT as the lender by assignment..

31.     The attempts to collect an unproven, unverified, arbitrary, and incorrect amount from the Plaintiffs prior to any alleged act of default by the Plaintiff following the completion of its Bankruptcy, misrepresentation of the assignment and acquisition date of the DOT, and the improper initiation of foreclosure proceedings by SCIG and U.S. Bank constitute a breach of the terms and conditions of the DOT.

32.     The breach of contract committed by the Defendants has caused the Plaintiffs to incur ongoing and substantial economic damages, including the costs of seeking to validate the debt and to bring this lawsuit.

<u>**COUNT II – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**</u>

33.     Plaintiffs hereby incorporate and adopt paragraphs 1-32 as if herein copied verbatim.

34.     There is a Covenant of Good Faith and Fair Dealing between Plaintiffs and SCIG and U.S. Bank by virtue of them being parties to and/or holders of interests in the DOT.

35.     The Defendants have failed to address in any way the misapplication of funds or improper and unfounded charges demanded of the Plaintiffs while admitting that they did not have the information from a prior servicer of the loan necessary to validate the amounts owed; instead, Defendants refused to accept any payment from Plaintiffs and attempted to proceed to with the foreclosure of the Property; thereby, breaching the Covenant of Good Faith and Fair Dealing.

36.     Defendants are fully aware of the disputed charges and remain unwilling to provide sufficient justification or explanation for line items that significantly impact the amount requested of the Plaintiffs, resulting in the continued failure of the Defendants to provide Plaintiffs an accounting that is true, complete and accurate.

37.     The Defendants' breach of the Covenant of Good Faith and Fair Dealing has caused the Plaintiffs ongoing and substantial economic damages including the costs of seeking to validate the debt and to bring this lawsuit.

## <u>COUNT III – VIOLATIONS OF THE FAIR DEBT COLLECTION ACT</u>

38.     Plaintiffs hereby incorporate and adopt paragraphs 1-37 as if herein copied verbatim.

39.     Defendant SN's debt collection efforts instigated during the Plaintiffs' active Bankruptcy violated various provisions of the Fair Debt Collection Practices Act ("FDCPA").

40.     Pursuant to 15 US.C §1692(e), a debt collector may not use false, deceptive, or misleading representations or means in connection with the collection of any debt.

41.     Defendant SN informed the Plaintiffs, as well as the Bankruptcy Court, that SCIG, and representative U.S. Bank, were assigned the DOT, including the transfer of the promissory note, in April of 2018 and that all communications and related monies should be forwarded to SN as servicer and possessor of the collection interest in the loan. This communication was demonstrably false as the transfer and assignment to U.S. Bank and SCIG was not made until September 2020.

42.     Additionally, Defendant SN has falsely misrepresented the amount of the debt by inflating monthly payments on the basis of unfounded and unverified charges, and Defendant SN continued to attempt to collect the incorrect amount when questioned, even after Defendant SN's own representative confirmed that the amount was unverified by stating, "[d]ue to unfortunate circumstances I do not have the breakdown of the fees at this time to send you. We are having to work with the previous servicing companies to get some documentation."

43.     Pursuant to 15 US.C §1692(g), upon notification of a dispute by a debtor, the debt collector shall obtain and provide verification of the debt to the debtor. The Plaintiffs have disputed the alleged debts and requested verification of same from the Defendant SN on multiple occasions for over two years. Plaintiffs first received an initial collection notice from SN on behalf of U.S. Bank and SCIG on April 18, 2018 which included the following, "SN Servicing Corporation is attempting to collect a debt." The Plaintiffs began requesting complete accountings of the alleged debt in May 2018.

44.     While Defendant SN alleges to have provided verification of the alleged debt to Plaintiffs in a communication dated January 8, 2019, that communication failed to address the nature of substantial fees and merely restated an amount sought, thereby failing to provide Plaintiffs with enough information to sufficiently dispute the payment obligation. To date,

Defendant SN has failed and/or refused to provide such verification and continue to pursue foreclosure of the related Property based upon these unverified and disputed amounts.

45.    Between April 2018 and Defendant SN's alleged response in January 2019, SN did not cease its attempts to collect the alleged debt while collecting information for the verification in direct violation of the statute and refused to accept payments from the Plaintiffs during that time.

46.    Defendant SN is liable to the Plaintiffs for the actions that violated the FDCPA which include the specified actual damages, the largest of which are the costs and attorney fees related to the collection of the alleged debt and this suit specifically provided pursuant to the 15 US.C §1692, *et seq*., as well as statutory damages.

## COUNT V – VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT

47.    Plaintiffs hereby incorporate and adopt paragraphs 1-46 as if herein copied

48.    Tennessee Code Annotated ("TCA") §47-18-104(b)(14) specifically provides that causing confusion or misunderstanding with respect to the authority of a representative or agent to negotiate the final terms of a consumer transaction is a deceptive and misleading practice under the statute. Further, TCA §47-18-104(b)(27) specifies as actionable enagaging in any act or practice which is deceptive to the consumer or to an persons.

49.    Prior to the initiation of any foreclosure action, SN, on behalf of U.S. Bank and SCIG, made false and deceptive statements in filings to the Bankruptcy Court and communications with the Plaintiffs falsely claiming that the DOT had been assigned to Defendants when it was not actually assigned until five months later. For nearly five (5) months, Defendant SN attempted to collect a debt for U.S. Bank and SCIG that was not U.S. Bank or SCIG's debt to collect. During that same period, Plaintiffs twice requested, and were twice

denied, restructuring of the loan by SN in behalf of U.S. Bank and SCIG when SN, U.S. Bank, and SCIG did not yet hold any interest in the mortgage. Additionally, Defendants made knowingly false statements regarding verification in an attempt to collect a knowingly false amount from Plaintiffs in relation to the DOT.

50.     The Defendants have failed and/or refuse to provide accountings related to the DOT.

51.     The Defendants have returned and refused to accept payments by the Plaintiffs while continuing to charge late fees for the payments the Defendants refuse to accept.

52.     The Plaintiffs have been financially harmed and continues to incur financial damages, including court costs and attorney's fees to stop foreclosure, due to the Defendants' intentional, reckless and fraudulent misrepresentations and deceptive acts.

## COUNT VI – 12 U.S.C §2601 (RESPA)

53.     Plaintiffs hereby incorporate and adopts paragraphs 1-52 as if herein copied verbatim.

54.     12 U.S.C. §2601, *et seq.*, otherwise known as "RESPA", requires that mortgage servicers respond in certain time frames and in certain manners when a borrower requests information and/or asserts that an error occurred in relation to the servicing of a mortgage.

55.     The Plaintiffs made repeated inquiries and disputes to SN, SCIG, and U.S. Bank concerning the allocation of funds, unknown and unverified charges, and unsubstantiated rate changes. Specifically on June 17, 2019, September 24, 2019, and December 3, 2019, following being contacted by SN's counsel on January 8, 2019, Plaintiffs provided SN's counsel written correspondences on a medium not supplied by the servicer, which included the name and

account of the borrower, and sufficiently detailed for the servicer distinct types of information sought in its numbered paragraphs and concerned fraud or mistake with regards to the past due amount, which, accordingly, concerned the servicing of the loan. Said inquires constitute Notices of Error ("NOE") and Qualified Written Requests ("QWR") as set forth in RESPA.

56.     The Defendants refusal and/or failure to properly respond to the Plaintiffs requests constitute a violation of RESPA; thus, the Defendants are liable to the Plaintiffs for said violations.

57.     The Defendants are liable to the Plaintiffs for the actions that violated RESPA which include the specified actual damages, the largest of which are the costs and attorney fees related to the collection of the alleged debt and this suit specifically provided pursuant to the 15 US.C §2601, *et seq*., as well as statutory damages.

**WHEREFORE,** Plaintiffs pray for the following:

1.     That service of process be issued and served upon Defendants;

2.     That a jury of United States citizens be empaneled to act as the finder of fact in this matter;

3.     That Plaintiffs have and recover from the Defendants damages for breach of the contract;

4.     That Plaintiffs have and recover from the Defendants damages, compensatory and punitive, including attorney's fees and all discretionary costs, associated with this cause for the violations of the Tennessee Consumer Protection Act;

5.     That Plaintiffs have and recover from the Defendants damages, compensatory and punitive, including attorney's fees and all discretionary costs, associated with this cause for the violations of the Fair Debt Collection Practices Act;

6.     That Plaintiffs have and recover from the Defendants damages, compensatory and punitive, including attorney's fees and all discretionary costs, associated with this cause for the violations of the RESPA;

7.     That Plaintiffs reserve the right to amend this Complaint to conform to facts as they develop;

8.     That Plaintiffs have such other and further relief to which they are entitled.

Respectfully submitted,

HARKAVY SHAINBERG KAPLAN PLC

By: /s/ Derek E. Whitlock
     Derek E. Whitlock (TN Bar #29927)
*Attorneys for Plaintiffs*
6060 Poplar Ave, Ste 140
Memphis TN  38119
(901) 761-1263
dwhitlock@harkavyshainberg.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this, the 21st day of October, 2020, a copy of the foregoing Petition for Temporary Injunction was served via first class mail, postage prepaid upon:

SCIG Series III Trust                                     U.S Bank Trust National Association
C/O – Trustee - U.S Bank Trust National Association       300 East Delaware Avenue, 8th Floor
300 East Delaware Avenue, 8th Floor                       Wilmington, Delaware 19801
Wilmington, Delaware 19801

SN Servicing Corporation
C/O - Registered Agent -The Prentice-Hall Corporation System, Inc.
2908 Poston Avenue
Nashville, Tennessee 37203-1312.

/s/ Derek E. Whitlock
Derek E. Whitlock