**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **DONAL M. MCDONAGH, and MICHELE R. MCDONAGH** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 2:20-cv-02539-JMP-cgc** |
| **SCIG SERIES III TRUST, SN SERVICING CORPORATION, and U.S. BANK TRUST NATIONAL ASSOCIATION,** | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' BRIEF IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW, Plaintiffs Donal M. McDonagh and Michele R. McDonagh (hereinafter collectively referred to as "Plaintiffs" or the "McDonaghs") and hereby submit their Brief in Opposition to SN Servicing Corporation ("SN Servicing") and U.S. Bank Trust National Association's ("U.S. Bank") (hereinafter collectively referred to as the "Defendants") Motion to Dismiss Plaintiffs' Second Amended Complaint ("Motion"), and for cause of action would respectfully show the Court as follows:

## I. INTRODUCTION

1. The McDonaghs' claims stem from Defendants' actions and omissions as lender and servicer of the McDonaghs' loan for their home located at 2416 Sanders Ridge, Germantown, Tennessee 38138 (the "Property"). The McDonaghs financed the purchase of the

Property with a loan obtained by Trust One Bank ("Trust One") in the amount of $700,000 on August 29, 2007, as represented by a promissory note ("Note") and secured by a Deed of Trust ("DOT") (collectively referred to as the "Mortgage").

2. On July 20, 2012, the McDonaghs jointly filed a Chapter 13 Bankruptcy filing in the United States Bankruptcy Court in the Western District of Tennessee ("Bankruptcy") which listed the Mortgage. The Bankruptcy was successfully performed by the McDonaghs and discharged on July 13, 2018. During that time, the DOT was assigned, and the Note was transferred, three (3) separate times, ultimately being assigned to U.S. Bank as trustee for the SCIG Trust on or about September 21, 2018. Upon information and belief, SN Servicing immediately began servicing the Loan on behalf of U.S. Bank.

3. On June 24, 2020, the McDonaghs filed their First Verified Complaint ("Complaint"), together with their Fiat issuing a Temporary Restraining Order, against Defendants in Part II of the Chancery Court of Tennessee for the Thirtieth Judicial District at Memphis—asserting breach of contract, breach of the covenant of good faith and fair dealing, violations of the Fair Debt Collections Act ("FDCA"), violations of the Tennessee Consumer Protection Act ("TCPA"), violations of 12 U.S.C. §2601, and to enjoin foreclosure sale. The McDonaghs also sought that a jury be empaneled to act as finder of fact, the court issue a Notice of Lien Lis Pendens, and that they be awarded such other and further relief for which they are entitled.

4. Defendants removed this case to this Court on July 24, 2020 and filed their First Motion to Dismiss on August 14, 2020.

5. The McDonaghs filed their Amended Complaint on October 20, 2020 and their Second Amended Complaint ("Amended Complaint") on October 21, 2020. Defendants filed the Motion on November 3, 2020.

5. The Court should deny Defendants' Motion because the McDonaghs alleged facts "sufficient to state a claim to relief that is plausible on its face." *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, 864 F.3d 455, 458 (6th Cir. 2017) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## II. STANDARD OF REVIEW

6. Motion to dismiss under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") are **disfavored and rarely granted**. *Harris v. Am.*, 198 F.3d 245 (6th Cir. 1999) (unpublished) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957))(emphasis added); see also *S. Christian Leadership Conference v. Supreme Court*, 252 F.3d 781, 786 (5th Cir. 2001); *Lone Star Indus., Inc. v. Horman Family Trust*, 960 F.2d 917, 920 (10th Cir. 1992); *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986).

7. A motion to dismiss under Rule 12(b)(6) does not present the issue of whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence in support of the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test." *Id.* Rather, "a complaint should not be dismissed for failure to state a claim unless it appears **beyond doubt** that the plaintiff can prove **no** set of facts in support of his claim which would entitle him to relief." *Gibson*, 355 U.S. at 45-46 (emphasis added).

8. To survive a motion to dismiss, Plaintiffs must allege enough facts "to state a claim to relief that that is **plausible on its face**." *Twombly*, 550 U.S. 544, 570 (emphasis added).

9. “A claim has facial plausibility when the plaintiff pleads **factual content** that allows the court to draw the **reasonable inference** that the defendant is liable for the misconduct alleged.” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(emphasis added).

10. Furthermore, the pleading standard announced by Fed. R. Civ. P. 8 does **not** require “detailed factual allegations”; rather, it **only** demands that the pleading be more than “labels and conclusions.” *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555)(emphasis added).

11. “In reviewing the allegations, this Court construes the complaint in a light most favorable to the plaintiff, accepting all of the factual allegations as true and determines whether the plaintiff can prove **no** set of facts in support of his claims that would entitle him to relief.” *Arrow v. Fed. Reserve Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004).

12. In other words, a complaint need not set forth all the facts upon which a claim is based; rather, a short and plain statement of the claim is **sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests**. *Twombly*, 550 U.S. at 545 (emphasis added).

## III. ARGUMENT AND AUTHORITIES

13. Defendants insist that the McDonaghs’ claims are not based on any factual allegations, but a closer look at the Complaint shows the McDonaghs pleaded enough facts to establish claims that are plausible in their face. *See infra* ARGUMENT A-E.

### A. THE COURT SHOULD DENY DEFENDANTS’ MOTION BECAUSE THE MCDONAGHS’ BREACH OF CONTRACT CLAIM AND BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM ARE PLAUSIBLE ON THEIR FACE, AND THUS WORTHY OF FULL ADJUDICATION.

14. The essential elements of a breach of contract claim under Tennessee law include (1) the existence of a contract, (2) breach of the contract, and (3) damages which flow from the breach. *Life Care Ctrs. of Am. v. Charles Town Assocs. Ltd. P’ship*, 79 F.3d 496, 514 (6th Cir. 1996).

15. The Amended Complaint was clear as to the facts that make up the breach of contract claim: the McDonaghs paid the agreed to mortgage payments timely and in full during the pendency of the Bankruptcy from July 2012 to July 2018. During the Bankruptcy, in April 2018, SN Servicing on behalf of U.S. Bank began sending debt collection notices to Plaintiffs. However, the Mortgage was not assigned or transferred to U.S. Bank, specifically the DOT was not assigned and the Note was not transferred, until at least September 21, 2018, although it was represented to the Bankruptcy Court and the McDonaghs to have occurred prior to the discharge of the Bankruptcy. Immediately following the discharge of the bankruptcy, in July 2018, Defendants began to demand a monthly payment that exceeded the amount agreed to in the contract, or any modification thereof, without any accounting or reasoning whatsoever in violation of the Mortgage; refused to accept the McDonaghs monthly payments without any cause or explanation in violation of the Mortgage; and failed to break down additional fees charged to the McDonaghs, including the increased monthly payments, while admitting that they did not have the information from a prior servicer of the Loan necessary to even break down, much less assess, the fees owed. The Defendants, through their breaches and subsequent efforts toward a non-judicial foreclosure based on their breaches, forced the McDonaghs to incur expenses to dispute the invalid charges prior to litigation and file suit to prevent being forcibly removed from their home through non-judicial foreclosure.

16. Defendants' first theory that the McDonaghs fail to state a claim for breach of contract is that one fact alleged by the McDonaghs, that Defendants misrepresented the assignment and acquisition date of the DOT, is baseless because, according to the Defendants, the McDonaghs never allege that U.S. Bank did not hold the Note when SN started communicating with them in April 2018. Defendants argument is simply untrue: the McDonaghs make that very assertion, that U.S. Bank did not hold the Note in April 2018, no less than three times throughout the Amended Complaint. In paragraph 7 of the Amended Complaint, the McDonaghs, in an effort towards efficiency, define "DOT" as the whole of the Mortgage: the promissory note, security agreement, and the deed of trust. In paragraphs 11 of the

Amended Complaint, the McDonaghs assert that the DOT was assigned on or around September 21, 2018 and that Defendants have yet to provide Plaintiffs with a copy of the alleged assignment, conveyance or sale of the entirety of the DOT, "entirety" referring to the three separately referenced interests to the Property: the promissory note, security agreement, and deed of trust. In paragraph 22 of the Amended Complaint, the McDonaghs, when expressly detailing the misrepresentation of the Defendants in April 2018, allege that Defendants falsely told the McDonaghs that they were the "lawful holder" of the DOT. The McDonaghs were not referring to merely the assignment of the deed of trust, but the physical holder of the collective DOT: the promissory note, security agreement, and deed of trust. Finally, and starkly, in Count III paragraph 41 of the Amended Complaint, the McDonaghs allege that, contrary to the assertion by the Defendants that they were "assigned the DOT, including the transfer of the promissory note, in April 2018" the "transfer and assignment to U.S. Bank and SCIG was not made until September 2020." Thus, as the Defendants clearly overlooked the numerous allegations concerning the promissory note, their argument is without merit. Defendants mere assertion that the deed of trust is not specifically referenced does not change that the facts alleged by the McDonaghs, namely the Defendants' acts to collect unverified and incorrect sums from Plaintiff under the authority of the Mortgage and unlawful foreclosure based on attempting to collect incorrect and unverified amounts, give rise to a breach of contract due to the Defendants failure to collect sums rightfully included in the terms of the agreement.

17. Defendants' second theory, that foreclosure proceedings were properly initiated because the McDonaghs fell behind on their mortgage payment in mid-2017, is absolutely untrue. In paragraphs 9 and 10 of the Amended Complaint, the McDonaghs correctly assert that they filed for Chapter 13 Bankruptcy on July 20, 2012, and after performing successfully, the Bankruptcy was discharged on July 13, 2018. The Bankruptcy plan and order of discharge are included by the McDonaghs in the Amended Complaint as Exhibit II, demonstrating the validity of the assertion. As stated in paragraph 12 of the Amended Complaint, the McDonaghs made all post-petition mortgage payments, from July 20, 2012 to July 13, 2018, directly to the alleged Mortgage holders during the Bankruptcy and never once did an

alleged holder or assignee of the Mortgage inform the McDonaghs or the United States Bankruptcy Court of a default. The claim of the Defendants that Plaintiffs admitted they defaulted on their payments in mid-2017 is completely false, and the Plaintiffs make assertions and provide evidence to the contrary in the Amended Complaint, at the very least making this a question of material fact to be decided by the Court.

18. Finally, Defendants argue that the McDonaghs failed to present facts that show damages due to Defendants' breach of contract because Defendants allege that the final statement under Count 1 of the Amended Complaint is conclusory. In context, the statement is not conclusory and is supported by all the facts alleged preceding it in the Amended Complaint. Black's Law Dictionary defines "[a]ctual damages" as "[c]ompensation for actual injuries or loss." In paragraph 29, the beginning of Count 1 in the Amended Complaint, the McDonaghs incorporate and adopt the preceding paragraphs of the Amended Complaint, including the fact section, "as if herein copied verbatim." In the preceding paragraphs, the McDonaghs detailed a years long dispute over the validity of the Defendants' incorrect and unsubstantiated charges, include as exhibits exchanges between counsels for both the McDonaghs and the Defendants seeking to validate the debt, and cite the June 24, 2020 unlawful non-judicial foreclosure that was only prevented by the filing of this suit. If not for Defendants attempting to charge unsubstantiated fees that are not supported or authorized by the terms of the Mortgage and initiating a non-judicial foreclosure on false pretenses, the McDonaghs would not have suffered the loss of having to hire counsel to seek substantiation and dispute the validity of the charges with SN prior to litigation or file suit requiring an emergency order of the Court to prevent the unlawful foreclosure.

19. Tennessee law imposes a duty of good faith and fair dealing in the performance of every contract. *Hometown Folks, LLC v. S&B Wilson, Inc.,* 2011 WL 2566825 at *4 (6th Cir. 2011); see, e.g., *Lamar Adver. Co. v. By–Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009). The purpose of this implied covenant is: "(1) to honor the reasonable expectations of the contracting parties and (2) to protect the rights of the parties to receive the benefits of the agreement into which they entered." *Lamar Adver. Co.*, 313 S.W.3d 791. The duty of good faith and fair dealing requires parties to a contract to conduct

themselves fairly and responsibly. *S&B Wilson, Inc.,* 2011 WL 2566825 at *6; see, e.g., *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn.Ct.App.1995) ( "[T]here is an implied undertaking in every contract on the part of each party that he will not intentionally or purposely do anything ... which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." (internal quotation marks and citation omitted)). Parties have a duty of good faith and fair dealing not only in executing the transaction ultimately contemplated by the contract, but also in fulfilling the preconditions and contingencies set forth in the contract. *Id.* Because the nature of the duty of good faith and fair dealing depends on the contract at issue, "courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable." *TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn.Ct.App.1987).

20. In *S&B Wilson, Inc.*, the 6th Circuit Court of Appeals found, under an admittedly deferential standard of review similar to that of a 12(b)(6) motion, that where a party had the right under a contract to terminate an agreement and did so accordingly, that same party could have breached the duty of good faith and fair dealing absent a separate breach of the contract, and the court affirmed that a reasonable jury could have found as much. *S&B Wilson, Inc.,* 2011 WL 2566825 at *6-7.

21. Defendants' assertion that there cannot be a successful action for breach of an implied covenant of good faith and fair dealing in a contract without a corresponding breach of contract claim under Tennessee law is incorrect as the 6th Circuit has precisely found the opposite in *S&B Wilson, Inc* where a contract was found to have been properly terminated by a party and that same party was found to have breached the implied covenant of good faith and fair dealing in said contract. *S&B Wilson, Inc.,* 2011 WL 2566825 at *6-7. Plaintiffs asserted in their Amended Complaint that Defendants impeded their rights under the Mortgage by unjustifiably increasing monthly payments and failing to address in any way or account for misapplication of funds and improper and/or unfounded charges. These acts, when seen in a light most favorable to the McDonaghs, as is the Rule 12(b)(6) standard, amount to a breach of the implied covenant of good faith and fair dealing because the Defendants acts breached express duties

under the Mortgage, any modification thereof, and specifically the Note establishing the amount of the McDonaghs' payments. Based on the facts alleged and Tennessee law, it is not beyond doubt that the plaintiff could prove a set of facts in support of the claim that would entitle them to relief.

22. Viewing the facts in the light most favorable to the McDonaghs, this Court should deny Defendants' Motion.

**B. THE COURT SHOULD DENY DEFENDANTS' MOTION BECAUSE THE MCDONAGHS' CLAIM UNDER THE FDCPA IS PLAUSIBLE ON ITS FACE, AND THUS WORTHY OF FULL ADJUDICATION.**

23. Defendants argument that the McDonaghs' FDCPA claim is barred by the statute of limitations must fail because Defendants, to this day, continue to use false and misleading representations or means to collect a debt from the McDonaghs as alleged in the Amended Complaint. 15 U.S. Code § 1692k(d) provides that an action may be brought "within one year from the date on which the violation occurs." As alleged in the Amended Complaint, the Defendants continue to maintain the to this Court and the McDonaghs, as they did to the McDonaghs and the U.S. Bankruptcy Court in April 2018, the falsity that the DOT was assigned and Note was transferred to Defendants in April 2018 when they were actually assigned and transferred in September 2018, after the Defendants added arbitrary and unverifiable charges to the McDonaghs account and misrepresented their legal authority as to the Mortgage. They also continue to assert the validity of the incorrect and unverifiable charges. As this misrepresentation remains ongoing, the cause of action remains germane, and Defendants statute of limitations claims are unfounded.

24. In construing the definition of "debt collector" under 15 U.S.C. § 1692a(6), the Sixth Circuit has found that a debt collector "includes any non-originating debt holder that . . . acquired a debt in default." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012). It has further found that under the FDCPA, "debt collector" also includes the enforcement of security interests, finding that the term liberally applies even to those only engaged in repossession activities under a lien, "[15 U.S.C. § 1692a(6)] applies to those whose only role in the debt collection process is the enforcement of a security

interest." *Glazer v. Chase Home Finance LLC*, 704 F.3d 453, 464 (6th Cir. 2013) (quoting *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378 (4th Cir. 2006)). In the Amended Complaint, the McDonaghs plead that Defendant SN came to service the McDonaghs' debt while the McDonaghs were performing under a Chapter 13 Bankruptcy plan and that the DOT and Note are the operative documents as to the agreement. By the terms of the DOT, the McDonaghs were in default merely by filing for Chapter 13 Bankruptcy protection.

24. Defendants contend that the McDonaghs make conclusory statements regarding the status of SN Servicing as a "third party debt collector;" however, the McDonaghs, in addition to specifically labeling the Defendants as debt collectors, assert in the Complaint that the Defendants performed particular actions that made them debt collectors under the statute, that they acquired the collection interests and servicing rights to the Loan and DOT while the McDonaghs were in bankruptcy, thus in default, and attempted to collect the debt by demanding payment via phone, email, and mail. Where the allegations in a FDCPA claim specifically state that defendant performed a particular action, those statements are not conclusory. See *Pearson v. Specialized Loan Servicing, LLC*, No. 1:16-CV-318, 2017 WL 3158791, at *4 (E.D. Tenn. July 24, 2017); see also *Riley v. Kurtz*, 893 F. Supp. 709, 721 (E.D. Mich. 1995). Additionally, Defendants falsely assert that SN is only referred to as a debt collector in the "Parties" section of the Amended Complaint, which again is an entirely false statement from the Defendants. In addition to the "Parties" section, the McDonaghs refer to SN sending "debt collection notices" to the McDonaghs in paragraph 13 of the Amended Complaint and as "holding servicing rights and the collection interest on the loan" to begin "attempting to collect Plaintiff's debt by demanding payment via phone, email, and mail." Finally, the Mcdonaghs attach communications from as early as April 2018 in which SN holds itself out a a "debt collector" that is attempting to collect a debt. The facts pled by the McDonaghs regarding Defendants actions, and self-labeling, meet the statutory definition of a "debt collector."

25. Next, the Defendants' argument that SN's April 2018 false, deceptive, and misleading statements regarding U.S. Bank's status as the holder of the Note and assignee of the Deed of Trust, and thereby SN's rightful interest to collect the debt on behalf of U.S. Bank, does not violate 15 U.S.C. § 1692(e) because the communication was either not an attempt to collect a debt or not even "connected" to an attempt to collect a debt flies against the facts as plead in the Amended Complaint and the reality of the situation. After misrepresenting their statuses as the proper holder of the Note, assignee of the DOT, and rightful servicer of the Mortgage, Defendants continuously made and relied on that falsity as well as inaccurate and unverifiable charges in repeated attempts to collect from the McDonaghs.

26. Under the FDCPA, false or misleading representations include: false representation of the character, amount, or legal status of any debt as well as the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. 15 U.S.C. § 1692(e)(2)(A), 1692(e)(10).

27. The McDonaghs specifically allege several times in the Complaint that the Defendants increased monthly payment amounts without reason, using unverifiable charges as a basis, and attempted to collect that amount. In Exhibit VII, VIII, IX, and X of the Amended Complaint, the McDonaghs show communications made to Defendants whereby they provide calculations showing how the Defendants increased payment amount was incorrect and questioning the vailidity of ambiguous charges used by the Defendants to calculate a higher monthly payment amount when the interest rate on the loan allegedly decreased. The McDonaghs allege in the Amended Complaint that despite numerous requests of the Defendants to clarify the monthly payment amounts, they were rebuffed each time, and the McDonaghs attach several exhibits of communications with the Defendants evidencing the same. The McDonaghs clearly assert that the Defendants made false representations of the amount of the debt, and that Defendants continued to attempt collect that amount when questioned even after the Defendants' representative confirmed that they did not know the correct amount stating "[d]ue to unfortunate circumstances I do not have the breakdown of the fees at this time to send you. We are having to work

with the previous servicing companies to get some documentation." These pleaded false representations alone are enough to state a claim under the FDCPA.

28. The McDonaghs also plead in the Amended Complaint that the Defendants, in attempts to collect the debt, falsely represented both to them and the U.S. Bankruptcy Court that the debt had been transferred to the Defendants when it in fact had not been transferred. The Amended Complaint provides that the assignment of the DOT and transfer of the Note occurred months after the Defendants represented to the Bankruptcy Court and to the McDonaghs that they were collecting the debt and enforcing the mortgage lien, and even after the Defendants plainly stated to the McDonaghs that they did not have the information available to verify or explain the questioned charges.

29. The Defendants contend that their deceptive and false communication regarding the transfer and assignment of the Mortgage is not a violation because it does not meet the threshold of the factors as contained in *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 430 (6th Circ. 2015). However, a simple review of the factors and facts as plead in the Amended Complaint shows otherwise.

> This review takes into account the following factors: (1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to an inquiry or requested by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay.

*Id.* at 431. The relationship between SN and the McDonaghs was a debt collector and debtor under the statute for the reasons stated above based on the status of the McDonaghs and the actions and SN both self-identifies as a debt collector and states explicitly that the communication is an attempt to collect a debt. The April 18, 2018 communication from SN to the McDonaghs states that the "Loan was transferred to U.S. Bank and SN Servicing is the new servicer;" the second page of the April 18, 2018 communication, as included in the Complaint as Exhibit II, states "SN Servicing Corporation is attempting to collect a debt;" the communication was accompanied by an immediate increase in the monthly payment amount as soon as the Bankruptcy was discharged even though the transfer of the

mortgage occurred months later; the McDonaghs never sought out the April 18, 2018 communication as they were unaware of the Defendants prior to it; and finally, even though the Defendants were not rightful holders of the Mortgage, they knew that such a communication would make it likely that the McDonaghs, who had consistently paid Mortgage holders while in Bankruptcy, would pay them. This matter and the communications are entirely distinguishable from the facts in *Goodson*, because the Plaintiffs in *Goodson* did not allege that the timing of the transfer in this matter makes the SN's statements in the April 18, 2018 communication false on their face, and in this matter the timing of the letter, right as the McDonaghs' Bankruptcy was winding down and immediately preceding it being discharged, was in and of itself utilized by the Defendants to induce the McDonaghs to begin making payments to them under the threat of foreclosure prior to Defendants having the right to make that demand. Further, the oft-stated, incorrect assertion that the McDonaghs do not allege that U.S. Bank was not the holder of the Note in April 2018 is discussed at length above and is contradicted with even a cursory reading of the Amended Complaint. Construing the Complaint in a light most favorable to the McDonaghs and accepting the factual allegation that Defendants' April 2018 statements were false as alleged, the court must find that the McDonaghs can prove a set of facts in support of their FDCPA claim that would entitle them to relief.

30. Defendants claim that their communication sent to the Bankruptcy Court and the McDonaghs on April 18, 2018 was not a communication to collect a debt, thus cannot be the initial communication as asserted in the Amended Complaint to be used to adjudge whether the McDonaghs met the thirty day response requirement of 15 U.S.C. § 1692g(b). However, the second page of the April 18, 2018 communication, as included in the Complaint as Exhibit II, states "SN Servicing Corporation is attempting to collect a debt." The McDonaghs allege in the Amended that they began requesting complete accountings of the alleged debt in May 2018 and new monthly payments in July 2018, and then the McDonaghs provide specific exhibits showing those requests continuing no less than on three occasions afterwards: May 17, 2018, August 16, 2018, and September 16, 2018, all prior to the actual assignment and transfer of the Mortgage that occurred on September 21, 2018. Further, as plead in the Amended

Complaint, SN continued to attempt to collect the debt throughout the process, but certainly between April 2018 and January 2019. Viewing those facts in a light most favorable to the McDonaghs, the McDonaghs plead a set of facts whereby they meet the timing requirements of 15 U.S.C. § 1692g(b).

31. The Defendants then claim that the SN Response, dated January 8, 2019, suffices as verification of the debt under 15 U.S.C. § 1692g(b). However, in between April 2018 and January 2019, Defendants did not cease their attempts to collect the debt while collecting information for the verification in violation of the statute, refused to accept payments from the McDonaghs during that time, and the monthly payment amount that Defendants list on the payoff statement, while stating an incorrect due date of January 1 is the amount that the McDonaghs had been asserting was correct for months, $5.992.45 instead of the $6,201.79 monthly payment demanded since July 2018. "The verification provision must be interpreted to provide the consumer with notice of how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment obligation." *Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 785-86 (6th Cit. 2014). When the dispute is as to the calculation of monthly payments, and the verification fails to address the calculation, it is not enough information to sufficiently dispute the payment obligation. In this instance, not only are the calculations not provided, the alleged verification states the monthly payment as being due two years prior for the same amount claimed by the McDonaghs all along.

32. Defendants' final argument, that the McDonaghs lack standing to bring a claim under the FDCPA because they do not plead for actual damages is, again, untrue. All cases cited by the Defendants show situations in which Plaintiffs do not plead for actual damages. Here, the McDonaghs plead specifically for actual damages, and identify the damages. The McDonaghs specifically identify damages of needing to bring this suit in order to prevent the June 2020 foreclosure sale from occurring, a feat accomplished by a state court order, but also the McDonaghs plead actual damages for the costs and attorney fees to dispute and communicate with the Defendants regarding their collection attempts prior to this suit occurring, as evidenced by the exhibits in the Amended Complaint showing extensive

communication between the McDonagh's counsel at the time and SN's counsel in attempts to verify the debt and resolve the ambiguity prior to this lawsuit being filed. The McDonaghs also claim the costs of this action under 15 U.S.C. § 1692k(a)(3), but the costs and attorneys fees incurred by the McDonaghs and plead for in the Amended Complaint are wholly separate actual damages, both as plead and in actuality.

33. Viewing the facts in the light most favorable to the McDonaghs, this Court should deny Defendants' Motion.

**C. THE COURT SHOULD DENY DEFENDANTS' MOTION BECAUSE THE MCDONAGHS' CLAIM UNDER THE TCPA IS PLAUSIBLE ON ITS FACE, AND THUS WORTHY OF FULL ADJUDICATION.**

34. The Defendants challenge to the McDonaghs' TCPA claim, that it is barred by the one-year statute of limitations, is incorrect for similar reasons as the FDCPA claim, because Defendants, to this day, continue to use false and misleading representations or means to collect a debt from the McDonaghs as alleged in the Amended Complaint. Tenn. Code. Ann. § 47-18-110 provides that an action may be brought "within one (1) year from a person's discovery of the unlawful act or practice." Contrary to the Defendants assertions in their motion, and as alleged in the Amended Complaint, the McDonaghs did not know of the misrepresentation regarding the Defendants interests in the Mortgage in April 2018, and could not have because Defendants didn't even record the assignment of the DOT until September 2018. However, even upon the recording of the assignment, Defendants maintain the falsehood that the Note was transferred in April 2018 to this day. Only after asking Defendants about the Note and verification of the debt and the inability of the Defendants to confirm otherwise did the McDonaghs have knowledge that the Note was not transferred in April 2018. Defendants also continue to assert the validity of the incorrect and unverifiable charges, which while questioned by the McDonaghs, did not become clear until communications with SN's attorney in 2019. As this misrepresentation remains ongoing, the cause of action remains germane, and Defendants statute of limitations claims are unfounded.

35. The McDonaghs sufficiently plead a claim under the TCPA based on Tenn. Code. Ann. § 47-18-104(b)(14) which prohibits "causing confusion or misunderstanding with respect to the authority of a salesperson, representative, or agent to negotiate the final terms in a consumer transaction" because SN, on behalf of U.S. Bank and SCIG, made false and deceptive statements regarding their rights and interests in the mortgage, changed the monthly payments based on incorrect and unverifiable charges, and then for five (5) months continued attempting to collect a debt that they had not right to collect. As a separate cause of confusion and misunderstanding based on their deception as plead in the Amended Complaint, the Defednants denied restructuring requests made by the McDonaghs when they had no legal authority to make such decisions as U.S. Bank was not transferred the Note or assigned the DOT until September 2018 long after the McDonaghs' requests were dined by the Defendants.

36. Defendants' statements that the McDonaghs' claims under the TCPA do not apply to this matter because, "the TCPA does not apply to allegedly deceptive conduct in foreclosure proceedings" fail to address the misrepresentation and deceptive act central to the McDonaghs' Complaint: the unilateral increase of the incorrect monthly payment amount and disregard for uncovering the actual calculation of the total debt owed.. Defendants' inflation of the monthly collection amount, prior to having any right to do so, and their attempts to collect the incorrect monthly payment amount with willful indifference to correcting the error and knowing misrepresentations to the McDonaghs and the Bankruptcy Court regarding their status as rightful owner of the Loan and DOT are overt acts of deception by the Defendants pleaded with specificity in the McDonaghs' Complaint.

43. Defendants reliance on cases that they claim hold that the TCPA does not apply to allegedly deceptive conduct in foreclosure proceedings are narrow holdings from matters that are wholly distinguishable from the facts alleged by the McDonaghs in the Complaint. In *Jones v. BAC Home Loans Servicing, LP*, No. W2016-00717-COA-R3-CV, 2017 WL 2972218, at *8 (Tenn. Ct. App. July 12, 2017),

the TCPA claim was "predicated on the fact that foreclosure took place despite the alleged promise to forbear made by [defendant's] representative." The McDonaghs do not allege a TCPA violation in the foreclosure proceedings, but rather the deceptive and knowingly false acts of the Defendants prior to any foreclosure attempt. Rather than claiming an oral promise as the deceptive act in the Amended Complaint, the McDonaghs plead that the Defendants made false and deceptive statements in filings to the Bankruptcy Court as well as in attempts to collect a knowingly false amount from the McDonaghs, which they still have not been able to explain to this day. Defendants reliance on *Pugh v. Bank of Am.*, No. 13-2020, 2013 WL 3349649, at *7 (W.D. Tenn. July 2, 2013), also does not correlate with the facts in this matter. The holding of the Court in *Pugh* relates to an alleged TCPA violation by the lender in their communications to a borrower regarding loan modification requests and subsequent foreclosure. The *Pugh* holding specifically states that the "[t]he gravamen of Plaintiffs' allegations is that foreclosing on the Property would be improper because of representations made during a series of events that led to the denial of Plaintiffs' request for a loan modification…in the context of a dispute that is effectively [over repossession of collateral securing a loan]." *Id.* at 17. The gravamen of this matter as alleged in the Amended Complaint is very different. Rather than alleging that Defendants made misrepresentations in promises to restructure the Mortgage, the McDonaghs allege that the Defendants unilaterally increased the total amount due, monthly payments based on incorrect and unverifiable charges, in contradiction to the final terms of the Mortgage, prior to the McDonaghs missing a payment following the discharge of their Bankruptcy, so foreclosure wasn't even on the table, and additionally Defendants did not have the proper authority to inflate the monthly payments or negotiate and deny any loan restructuring because they misrepresented that authority. The McDonaghs allege that they have suffered ongoing economic damages resulting from the Defendant's deceptions, including the legal costs and fees associated with protecting their interests in their real property prior to any foreclosure proceedings being initiated against the Property.

44. The McDonaghs allege that the Defendants arbitrarily and incorrectly inflated the the total amount due and the monthly payment amount of the McDonaghs on false pretenses. That increases of the monthly payments were not a part of restructuring or modifying the loan but was based on the amount as specified in the original and final Mortgage, not new negotiations. As for the Additional amounts added by the Defendants, we still await to learn of their origin. Therefore, Defendants argument that the complaint centers around requested modification and not the final terms of the note is incorrect. Defendants allegations that actual damages requested in the Amended Complaint are conclusory is also invalid and addressed at length above.

44. Viewing the facts in the light most favorable to the McDonaghs, this Court should deny Defendants' Motion.

**D. THE COURT SHOULD DENY DEFENDANTS' MOTION BECAUSE THE MCDONAGHS' CLAIM UNDER RESPA IS PLAUSIBLE ON ITS FACE, AND THUS WORTHY OF FULL ADJUDICATION.**

45. Defendants' proposition that the McDonaghs did not illustrate how SN failed to respond to the McDonaghs' Notices of Error and Qualified Written Request ("QWR") is untrue. In the Amended Comlaint, Count VI alleging RESPA violations begins by incorporating the preceding fifty-two (52) paragraphs. In those paragraphs, most specifically paragraphs 25 to 28, the McDonaghs clearly demonstrate how SN refused and failed to respond for their requests of validation of increased monthly charges based on unverifiable and unclear additions to the principal owed by the McDonaghs. In paragraph 25, the McDonaghs give a detailed list of issues that SN failed to address, explain, or verify including the increased premium and arbitrary, unverifiable charges. Despite continued requests and back and forth between the parties, and the initiation of this suit, SN and the Defendants remain unable to verify said charges. Further, the McDonaghs have pleaded that they have yet to receive a satisfactory response by the Defendants to the QWR issues, and Defendants have not disputed this fact.

46. As in their attempts to negate the pleaded actual damages under all previous counts alleged by the McDonaghs, the Defendants simply do not acknowledge that the McDonaghs plead actual

damages, not just from bringing this suit to prevent the immediate and irreparable harm of foreclosure, but also the attorney fees incurred by the McDonaghs while trying to get verification of the debt and charges from the Defendant in the year preceding the lawsuit. The Defendants remaining argument concerning concerning *Dunkle*, *Kantz*, *Marais*, and *Spokeo* moot in light of their disregard of the specific actual damages as asserted in the Amended Complaint.

49. Viewing the facts in the light most favorable to the McDonaghs, this Court should deny Defendants' Motion.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs Donal M. McDonagh and Michele R. McDonagh respectfully request that Defendants SN Servicing and U.S. Bank's Motions to Dismiss be denied.

Dated: November 17, 2020

Respectfully Submitted,

/s/ Derek E. Whitlock______
Derek E. Whitlock (Tenn. BPR No. 29927)
HARKAVY SHAINBERG KAPLAN PLC
6060 Poplar Ave., Suite 140
Memphis, TN 38119
Direct phone: (901) 866-5344
Direct fax: (901) 866-5419
Email: dwhitlock@harkavyshainberg.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2020, a true and correct copy of the foregoing document has been mailed U.S. Post to the following:

SCIG Series III Trust
C/O – Trustee - U.S Bank Trust National Association
300 East Delaware Avenue, 8th Floor
Wilmington, Delaware 19801

U.S Bank Trust National Association
300 East Delaware Avenue, 8thFloor
Wilmington, Delaware 19801

SN Servicing Corporation
C/O - Registered Agent -The Prentice-Hall Corporation System, Inc.
2908 Poston Avenue
Nashville, Tennessee 37203-1312.

/s/ Derek E. Whitlock
Counsel for Plaintiffs