# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| DONAL M. MCDONAGH, and <br> MICHELE R. MCDONAGH <br><br> Plaintiffs, <br><br> v. <br><br> SCIG SERIES III TRUST, <br> SN SERVICING CORPORATION, <br> U.S. BANK TRUST NATIONAL <br> ASSOCIATION, and EDWARD <br> RUSSELL[1], Substitute trustee, <br><br> Defendant. | Case No. 2:20-cv-02539 |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Before the Court is Defendants SN Servicing Corporation ("SN") and U.S. Bank Trust National Association, as trustee for SCIG Services III Trust's[2] ("U.S. Bank") (collectively, "Defendants") Motion to Dismiss, filed on November 3, 2020. (ECF No. 32.) Defendants request that Plaintiffs Donal McDonagh and Michele Donagh's claims be dismissed for failure to state a claim, and alternatively, for lack of Article III standing. (ECF No. 32 at PageID 344.) Specifically, Defendants raise the following arguments: 1) Plaintiffs fail to state a claim for breach of contract; 2) Plaintiffs cannot state an independent claim for breach of the covenant of good faith and fair dealing; 3) Plaintiffs fail to state a claim under the Fair Debt Collection

---

[1] Edward Russell was dismissed as a defendant on August 21, 2020. (ECF No. 20 at PageID 211.)
[2] Defendants indicate while Plaintiffs have named SCIG Series III Trust and U.S. Bank National Association as separate defendants, the appropriate designation should be U.S. Bank Trust National Association, as Trustee for SCIG Services III Trust.

1

Practices Act ("FDCPA") and do not have standing to do so; 4) Plaintiffs fail to state a claim under the Tennessee Consumer Protection Act ("TCPA"); and 5) Plaintiffs fail to state a claim under the Real Estate Settlement Practices Act ("RESPA"). Plaintiffs' Brief in Opposition[3] was filed on November 17, 2020. (ECF No. 35.) Defendants' Reply brief was filed on December 1, 2020. (ECF No. 37.) For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' FDCPA and TCPA claims are **DISMISSED**. Plaintiffs' breach of contract, breach of covenant of good faith and fair dealing, and RESPA claims remain in the case.

### I.   Background

#### a.   Factual History

Plaintiffs are adult residents of Memphis, Tennessee who acquired title to a property at 2416 Sanders Ridge Ln, Germantown, Tennessee 38138 (the "Property") on or about August 29, 2007. ("Second Amended Complaint," ECF No. 31[4] ¶¶ 1, 8.) At that time, Plaintiffs executed a promissory note ("Note"), security agreement, and deed of trust (collectively, "DOT") for the benefit of Trust One Bank. (Id. ¶ 8.) On July 20, 2012, Plaintiffs jointly filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court in the Western District of Tennessee. (Id. ¶ 9.) In April of 2018, while the bankruptcy was still proceeding, SN began sending debt collection notices to Plaintiffs related to the DOT. (Id. ¶ 13.) Plaintiffs allege that

---

[3] Plaintiffs varied the font in their Brief in Opposition to Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. Compare ECF No. 35 at PageID 406 with ECF No. 35 at PageID 409. Local Rule 7.1(b) requires font "no smaller than 12 point type." The font should be uniform throughout the document.

[4] Defendants note that "[t]he Second Amended Complaint cites to numerous exhibits, including the Deed of Trust. However, there are no exhibits attached." (ECF No. 32-1 at PageID 348.) "A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003) (citations omitted). Accordingly, the Court refers to the exhibits attached in the original complaint (ECF No. 1-1).

this was the first they learned of SN, SCIG Trust, U.S. Bank or any of the subsequent assignments of the DOT. (Id.)

In May 2018, Plaintiffs request to refinance the property was denied based on an insufficient income-to-debt ratio. (Id. ¶ 17.) It was at this time that Plaintiffs became concerned that SN did not have a complete accounting of the DOT, and requested accountings of the alleged debt. (Id. ¶ 18.) In July 2018, SN began demanding a new monthly payment with an increase from $5,992.45 to $6,201.79. (Id. ¶ 19.) On July 13, 2018, Plaintiffs' bankruptcy proceedings were successfully discharged. (ECF No. 1-1 at PageID 25[5].) In August 2018, Plaintiffs attempted to modify the loan, but were denied based on SN's assertion that they could afford the ongoing payment. (ECF No. 31 ¶ 20; see also Exhibit VI, ECF No. 1-1 at PageID 61–62.) In September 2018, SN's representative Casey Edwards informed Plaintiffs that SN did not have a breakdown of the fees on the loan and that it was working "with previous servicing companies to get some documentation." (ECF No. 31 ¶ 21.) Plaintiffs contend that their payment for August 2018 was then returned to them and that they were informed by SN that it would no longer accept any payments from Plaintiffs. (Id. ¶ 23.)

SN responded to Plaintiffs' debt verification requests on January 8, 2019, this time providing a copy of the original line of credit and a payoff statement. (Id. ¶ 24.) The documentation provided did not include an accounting of the debt, a copy of the assignment of the DOT to the SCIG Trust, or an explanation of the increase in monthly payment. (Id. ¶ 24.) Through written correspondence, Plaintiffs continued to dispute the premium increase to $6,201.79, as well as other miscellaneous amounts, including "legal fees" of $19,906.05, and an escrow advance of $36,224.37. (Id. ¶ 25.) In Exhibit IX of the original Complaint, Plaintiffs

---

[5] Note that Plaintiffs did not attach the exhibits to the Second Amended Complaint. The Court instead refers to the attachments provided in the State Court Complaint in ECF No. 1-1. See supra Fn. 4.

requested a proper accounting of the fees, admitted that "a total of 24 payments are due" and represented that they were "prepared to pay $144,043.65 to reinstate the loan, which [was] the 24 payments due, at the monthly rate of $5,992.45, plus the late fee of $224.85." (ECF No.1-1 at PageID 82–83.)  Defendants instead proceeded with the foreclosure of the Property, which was set for June 24, 2020.  (ECF No. 31 ¶ 26.)  Pursuant to the allegations in the Second Amended Complaint, Plaintiffs assert five causes of action against Defendants: 1) Breach of contract; 2) Breach of covenant of good faith and fair dealing; 3) Violations of the FDCPA; 4) Violations of the TCPA; and 5) Violations of RESPA.  Plaintiffs seek actual damages, compensatory and punitive damages, statutory damages, discretionary costs, and attorneys fees. (ECF No. 31 at PageID 342–43.)

### b.  Procedural Background

Plaintiffs filed the Second Amended Complaint on October 21, 2020.  (ECF No. 31.) Defendants filed a Motion to Dismiss for Failure to State a Claim on November 3, 2020.  (ECF No. 32.)  As noted earlier, Plaintiffs filed a Response in Opposition on November 17, 2020, (ECF No. 35) and Defendants filed a Reply to Plaintiffs' Response on December 1, 2020  (ECF No. 37).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)).  A motion to dismiss only tests whether the plaintiff has pleaded a cognizable claim and allows the court to dismiss

meritless cases which would waste judicial resources and result in unnecessary discovery. Brown v. City of Memphis, 440 F.Supp.2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a court decides that the claim is not plausible, the case may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A complaint need not contain detailed factual allegations. Twombly, 550 U.S. at 570. A plaintiff without facts who is "armed with nothing more than conclusions," however, cannot "unlock the doors of discovery." Iqbal, 556 U.S. at 678-79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13, 2011), aff'd 481 F. App'x 252 (6th Cir. 2012).

### III. ANALYSIS

#### a. Plaintiffs Have Pled a Breach of Contract and Violation of Covenant of Good Faith and Fair Dealing

Count 1 of the Second Amended Complaint states that Defendants' "attempt[] to collect an unproven, unverified, arbitrary, and incorrect amount from the Plaintiffs prior to any alleged act of default by the Plaintiff following the completion of its Bankruptcy, misrepresentation of the assignment and acquisition date of the DOT, and the improper initiation of foreclosure

5

proceedings by SCIG and U.S. Bank constitute a breach of the terms and conditions of the DOT." (ECF No. 31 ¶ 31.) "In a breach of contract action, claimants must prove the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." Fed. Ins. Co. v. Winters, 354 S.W.3d 287 (Tenn. 2011) (internal citation omitted).

Defendants argue that Plaintiffs' allegation that there was a "misrepresentation of the assignment and acquisition date of the DOT" is merely that "SN notified the Plaintiffs of a transfer of servicing rights on behalf of U.S. Bank prior to the recordation of the assignment of the Deed of Trust." (ECF No. 32-1 at PageID 352.) If this was the full basis for the breach of contract claim, then this action would be dismissed, since Tennessee does not require that assignments of deeds of trust be recording and enables the party holding the underlying promissory note to enforce the deed of trust. Thompson v. Bank of Am., N.A., 773 F.3d 741, 749 (6th Cir. 2014) (internal citation omitted). "'Under Tennessee law, the deed of trust follows the note. Whoever holds the note owns the deed.'" Jones v. Select Portfolio Servicing, Inc., 672 F. App'x 526, 532 (6th Cir. 2014) (internal citation omitted). This is true "regardless of whether a party properly effectuated the assignment of a deed of trust in the first place." Jones, 672 F. App'x at 532. Here, Plaintiffs are not merely alleging that the assignment was not effectuated properly, but that the "DOT was not assigned and the Note was not transferred, until at least September 21, 2018," despite Defendants' representation to the Bankruptcy Court that it had been. (ECF No. 35 at PageID 410.) Furthermore, Plaintiffs argue that following the discharge of the bankruptcy, "Defendants began to demand a monthly payment that exceeded the amount agreed to in the contract, or any modification thereof, without any accounting or reasoning[,] refused to accept the McDonaghs monthly payments without any cause or explanation[,] and

6

failed to break down additional fees charged to the McDonaghs, including the increased monthly payments, while admitting that they did not have the information from a prior servicer of the Loan necessary to even break down, much less assess, the fees owed." (Id. at PageID 410.)

Plaintiffs further assert that foreclosure proceedings were improperly initiated, since the bankruptcy was discharged on July 13, 2018. (Id. at PageID 411.) While Defendants take issue with exactly when Plaintiffs fell behind on their payments, this remains a factual issue and the Court will not make a substantive ruling on Plaintiffs' claim at this juncture. Finally, Defendants allege that "Plaintiffs have failed to show any damages because of any breach of contract." (ECF No. 32-1 at PageID 353.) Plaintiffs, however, allege that the breach of contract has caused them to "incur ongoing and substantial economic damages, including the costs of seeking to validate the debt and to bring this lawsuit." (ECF No. 31 at PageID 337.)

"The Supreme Court took pains to stress in both Twombly and Iqbal that what it required at the pleading stage is a plausible, not probable, entitlement to relief." Erie Cty. V. Morton Salt, Inc., 702 F.3d 860, 868 (6th Cir. 2012). Defendants admit that "[i]t is undisputed that the Deed of Trust constitutes a contract between the parties," but dispute whether Plaintiffs have alleged non-performance on the part of Defendants. However, the Court finds that Plaintiffs have adequately pled the existence of a valid and enforceable contract, along with numerous facts to support their theory of breach, and that they have sustained damages resulting from such a breach. This Court has held such pleadings to be adequate in the past. See, e.g., Johnson v. Arch Specialty Ins. Co., 2020 WL 1853316, slip op. (W.D. Tenn. Apr. 13, 2020). Accordingly, Defendants' motion to dismiss is **DENIED** with respect to Plaintiffs' breach of contract claim.

7

Defendants also argue that Plaintiffs' claim for breach of the covenant of good faith and fair dealing should be dismissed because "where there is no claim for breach of contract, there can be no claim for violating the common law duty of good faith and fair dealing." (ECF No. 32-1 at PageID 354.) A cause of action for breach of covenant of good faith and fair dealings "is not a cause of action in and of itself but as a party of a breach of contract cause of action." Lyons v. Farmers Ins. Exchange, 26 S.W.3d 888, 894 (Tenn. 2000). "Under Tennessee Law, every contract carries with it an implied covenant of good faith and fair dealing." Wallace v. Nat'l Bank of Commerce, 938 S.W.2d 684, 686 (Tenn. 1996); see also Hometown Folks, LLC v. S&B Wilson, Inc., 643 F.3d 520, 527 (6th Cir. 2011) ("Tennessee law imposes a duty of good faith and fair dealing in the performance of every contract.") (internal citation omitted).

As explained above, Plaintiffs have sufficiently pled a claim for breach of contract. With that there is implied duty of good faith and fair dealing. Accordingly, Defendants' motion to dismiss with respect to Count II of the Second Amended Complaint is **DENIED**.

### b. Plaintiffs' FDCPA is Dismissed

In Count 3, Plaintiffs allege that Defendants' "debt collection efforts instigated during the Plaintiffs' active Bankruptcy violated various provisions of the [FDCPA][,]" including both 15 U.S.C. § 1692(e) and § 1692(g). (ECF No. 31 at PageID 338.) 15 U.S.C. § 1692(e) states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692(g) imposes the following responsibilities upon creditors:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692(g).

"The baseline for verification [under the FDCPA] is to enable the consumer to sufficiently dispute the payment obligation. Although the answer to that question depends on the facts of a particular situation… an itemized accounting detailing the transactions in an account that have led to the debt is often the best means of accomplishing that objective." Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC, 758 F.3d 777, 785 (6th Cir. 2014) (internal quotation marks omitted).

Defendant first argues that Plaintiffs' claim is barred by the one-year statute of limitations found in § 1692k(d) because "Plaintiffs' claim is based on alleged FDCPA violations caused by communications from April 18, 2018 through January 8, 2019." (ECF No. 32-1 at PageID 355.) In response, Plaintiffs argue that Defendants "continue to assert the validity of the incorrect and unverifiable charges. As this misrepresentation remains ongoing, the cause of action remains germane, and Defendants statute of limitations claims are unfounded." (ECF No. 35 at PageID 414.)

Both the Supreme Court and Sixth Circuit, however, have ruled on this type of "continuing-violation" argument. "The continuing-violation doctrine provides that violations 'which occur beyond the limitations period are actionable where a plaintiff challenges not just one incident of unlawful conduct but an unlawful practice that continues into the limitations period." Haithcock v. Frank, 958 F.2d 671, 677 (6th Cir. 1992) (internal quotations and citations omitted). The Sixth Circuit recognizes serial and system continuing violations, "each of which constitute[s] a narrowly limited exception to the general rule that the limitations clock begins to run at the time of the act that gives rise to the claim." Slorp v. Lerner, Sampson & Rothfuss, 587 F.App'x 249, 257 (6th Cir. 2014). "[W]e have never applied the continuing-violation doctrine to an FDCPA claim." Id. at 257. Doing so "would be inconsistent with the principles underlying the Supreme Court's limited endorsement of that doctrine in Morgan.…As a general matter, when a debt collector initiates a deceptive, abusive or otherwise unfair lawsuit, there is no doubt that the FDCPA claim—insofar as it is viable—accrues on that date. Although the subsequent prosecution of that suit may exacerbate the damages, the continued accrual of damages does not diminish the fact that the initiation of the suit was a discrete, immediately actionable event." Id. at 258. "[A]bsent the application of an equitable doctrine, the statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered." Rotkiske v. Klemm, 130 S.Ct. 355 (2019). Here, the very latest date that Plaintiffs could have filed an FDCPA claim is one year from the latest "discrete act," which would have allegedly occurred on January 8, 2019. (See "Letter from SN Servicing Corporation," ECF No. 1-1 at PageID 74 ("You are hereby notified that SN Servicing Corporation, its employees, agents and attorneys are **attempting to collect this debt**.").) Accordingly, Plaintiffs' FDCPA claims are time-barred

because the lawsuit should have been filed by January 8, 2020, but was not filed until June 24, 2020. Defendants' motion to dismiss is **GRANTED** with respect to Plaintiffs' FDCPA claims. The court does not reach the remainder of Defendants' arguments on this issue.

### c. Plaintiffs' TCPA Claim is Dismissed

Count V[6] of the Second Amended Complaint alleges that Defendants violated the TCPA, specifically the prohibitions against "causing confusion or misunderstanding with respect to the authority of a sales person, representative or agent to negotiate the final terms of a consumer transaction" and the prohibition against "engaging in any other act or practice which is deceptive to the consumer or to any other person[.]" T.C.A. §§ 47-18-104(b)(14), 47-18-104(b)(27). Defendants argue, among other things, that Plaintiffs' TCPA claims are also time-barred by a one-year statute of limitations. The TCPA's statute of limitations is more forgiving than that of the FDCPA, providing that an action may be brought "within one (1) year from a person's discovery of the unlawful act or practice." T.C.A. § 47-18-110. But, Plaintiffs' claim still fails under the "discovery" standard.

Plaintiffs argue that the "McDonaghs did not know of the misrepresentation regarding the Defendants['][*sic*] interests in the Mortgage in April 2018, and could not have because Defendants didn't even record the assignment of the DOT until September 2018…Only after asking Defendants about the Note and verification of the debt and the inability of the Defendants to confirm otherwise did the McDonaghs have knowledge that the Note was not transferred in April 2018." (ECF No. 35 at PageID 420.) Furthermore, Plaintiffs argue that the "incorrect and unverifiable charges" "did not become clear until communications with SN's attorney in 2019." (Id.) Even calculating the one-year clock from the latest date of January 8, 2019, on

---

[6] Note that Plaintiff mistakenly skips Count IV and lists the TCPA Claim as Count V. There is no "Count IV" in the Second Amended Complaint. ECF No. 31.

11

which SN's debt collection letter was sent (ECF No. 1-1 at PageID 74), Plaintiffs' claims are time-barred. Accordingly, Defendants' motion to dismiss is **GRANTED** on Count V of the Second Amended Complaint. The Court does not reach the merits of the remainder of Defendants' arguments.

### d. Plaintiffs' Sufficiently Allege a RESPA Claim

Count VI of the Second Amended Complaint alleges that Defendants have violated the RESPA by failing to respond to borrower requests in certain time frames and in certain manners. (ECF No. 31 at PageID 341.) Plaintiffs allege that they "made repeated inquiries and disputes to SN, SCIG, and U.S. Bank concerning the allocation of funds, unknown and unverfieid charges, and unsubstantiated rate changes." (Id.) Plaintiffs point to letters sent on June 17, September 24, and December 3, 2019 in response to a debt collection letter from SN on January 8, 2019. (See, e.g., "June 17, 2019 Letter," ECF No. 1-1 at PageID 82 (reiterating issues with payment increase to $6,201.79 from $5,992.45, legal fees of $19,906.05 and other problems in Defendants' correspondence).) 12 U.S.C. § 2605(e) sets forth the duty of loan servicers to respond to borrower inquiries, including "qualified written requests" ("QWR"), to which loan servicers are required to take certain actions within 30 days of receipt. 12 U.S.C. § 2605(e)(1)–(2). Plaintiffs' allege that their letters in June, September, and December of 2019 constitute notices of error ("NOE") and QWRs in accordance with the statute and application regulations. (ECF No. 31 at PageID 342.)

Defendants argue that these claims fail because Plaintiffs "did not plead any facts showing how SN's responses were deficient." (ECF No. 32-1 at PageID 364.) To the contrary, the Second Amended Complaint adequately lists the alleged deficiencies and lack of response to Plaintiffs' inquiries and letters. (See ECF No. 31 at PageID 336; see also ECF No. 1-1 ¶ 25

12

("Plaintiffs have disputed specifically and multiple times the increase in the related premium…the unknown and/or accounted for 'Prior service Escrow Adv'…the unknown and/or accounted for 'Prior Servicer Corp. Adv' of $19,906.05', the 'Miscellaneous' described as 'attorney fees'…the continuing late charges accruing due to SN's refusal to accept payments from the Plaintiffs, and all other unsupported and unverified charges that may be included on Plaintiffs accountings[.]"); see also id. ¶ 24 ("The debt-verification did not include an accounting of the debt, a copy of the assignment of the DOT to the SCIG trust, nor an explanation of the premium increase demanded by SN.").)  This is confirmed by the attached exhibits before the Court, which also suggest that Defendants did not and have not responded to any of Plaintiffs' June, September, or December 2019 letters.  (See ECF No. 1-1 at PageID 82–87.)  Defendants next argue that Plaintiffs have not alleged that SN is a loan servicer, despite the title of the company name (SN **Servicing** Corporation) and the text in its January 8, 2019 letter stating that "[t]he Note referenced in the loan number is seriously delinquent and has been **placed with SN Servicing Corporation for collection, who is entitled to receive all payments**."  (ECF Nos. 32-1 at PageID 364; 1-1 at PageID 74 (emphasis added).)  The Court rejects Defendants' argument on this point.

Finally, Defendants argue that Plaintiffs have not alleged actual damages resulting from any RESPA violations.  (ECF No. 37 at PageID 454.)  The Second Amended Complaint in fact alleges "specified actual damages, the largest of which are the costs and attorney fees related to the collection of the alleged debt and this suit specifically provided pursuant to 15 U.S.C. § 2601 [*sic*], as well as statutory damages."  (ECF No. 31 at PageID 342.)  Defendants cite to Segrist, in which the Middle District found that "[t]here [was] no factual content explaining how provisions of RESPA were alleged violated, how the Segrists were damaged, or what

13

damages the Segrists [] suffered as a result of the alleged RESPA violation(s)." (ECF No. 37 at PageID 454 (citing Segrist v. Bank of New York Mellon, 2017 WL 3674841, at *4 (M.D. Tenn. Aug. 25, 2017), aff'd, 744 F. App'x 932 (6th Cir. 2018)).)  Here, however, Plaintiffs have provided bases for the alleged RESPA violations, including both factual allegations and exhibit evidence of Defendants' responses or lack thereof to qualifying NOEs and QWRs.  Plaintiffs have further alleged actual damages stemming from these violations, which are detailed in depth throughout Plaintiffs' correspondence with Defendants' counsel.  (See, e.g., "January 3, 2020 Letter," ECF No. 1-1 at PageID 86.)  Accordingly, Defendants' motion to dismiss Plaintiffs' RESPA claim is **DENIED**.

## IV.     CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** Defendants' Motion to Dismiss.  Counts I, II, and VI remain in the case, while Plaintiffs' claims for violations of the FDCPA (Count III) and TCPA (Count V) are hereby **DISMISSED**.

**IT IS SO ORDERED**, this 12th day of March, 2021.

                                             /s/ Jon P. McCalla
                                            JON P. McCALLA
                                            UNITED STATES DISTRICT COURT JUDGE